MAX MENCHER, Appellant and Respondent, *v.* ADOLPH J. CHESLEY, Respondent and Appellant.

Argued May 28, 1947; decided October 16, 1947.

*Lyman Stansky* for plaintiff, appellant and respondent. I. The publication is libelous per se because it exposes plaintiff to public hatred, ridicule and contempt by falsely accusing him of communist affiliations and sympathies that allegedly caused him to obstruct the proper functioning of the OPA of which he was an official. (*Levy* v. *Gelber*, 175 Misc. 746; *Boudin* v. *Tishman*, 264 App. Div. 842; *Balabanoff* v. *Hearst Consolidated Publications, Inc.*, 294 N. Y. 351; *Wright* v. *Farm Journal, Inc.*, 158 F. 2d 976; *Katapodis* v. *Brooklyn Spectator, Inc.*, 287 N. Y.

17; *Cooney* v. *Legg*, 34 F. Supp. 531; *People* v. *Ruthernberg,* 299 Mich. 315; *State* v. *Boloff*, 138 Ore. 568; *Kaminsky* v. *American Newspapers, Inc.*, 283 N. Y. 748; *Bennet* v. *Commercial Advertiser Assn.*, 230 N. Y. 125; *Lunn* v. *Littauer,* 187 App. Div. 808; *More* v. *Bennett*, 48 N. Y. 472; *Moore* v. *Francis*, 121 N. Y. 199; *Klaw* v. *New York Press Co.*, 137 App. Div. 686; *Hoey* v. *New York Times Co.*, 138 App. Div. 149; *Hayes* v. *Van Gelder*, 231 App. Div. 663; *Grant* v. *Reader's Digest Assn., Inc.*, 151 F. 2d 733, 326 U. S. 797; *Sanderson* v. *Caldwell*, 45 N. Y. 398.) II. Where an article is susceptible of two interpretations, one of which renders it libelous per se, and the other of which renders it not libelous per se, the complaint should not be dismissed on motion. The sense of the words complained of becomes a question of fact for determination by the jury. (*Balabanoff* v. *Hearst Consolidated Publications, Inc.*, 294 N. Y. 351; *Hoey* v. *New York Times Co.*, 138 App. Div. 149; *Klaw* v. *New York Press Co., Ltd.*, 137 App. Div. 686; *Foley* v. *Press Publishing Co.*, 226 App. Div. 535; *Neaton* v. *Lewis Apparel Stores*, 267 App. Div. 728; *Klemin* v. *Smith*, 250 App. Div. 269; *Jacobs* v. *Herlands*, 259 App. Div. 823.) III. Paragraphs numbered 13, 14, 15, 16, 17, 19, 20, 21, 23, 24, 25, 29 and 33 are a proper part of the complaint. (*Balabanoff* v. *Hearst Consolidated Publications, Inc.*, 294 N. Y. 351; *Zirn* v. *Bradley*, 269 App. Div. 961.)

*Ernest P. Seelman* and *James S. Brown, Jr.*, for defendant, respondent and appellant. I. The complaint is insufficient in that it attempts to make nonlibelous words actionable by pleading extrinsic facts. In the absence of a plea of special damage the complaint should be dismissed. (*O'Connell* v. *Press Publishing Co.*, 214 N. Y. 352; *Miller* v. *Maxwell*, 16 Wend. 9; Seelman on Law of Libel & Slander, p. 134.) II. The present case is clearly distinguishable from the cases heretofore decided that it is libelous to charge a lawyer with being a communist or a member or legislative representative of the Communist Party. III. To call a man a communist or a member of the Communist Party should not be deemed a libel per se. (*Garriga* v. *Richfield*, 174 Misc. 315; *Moffatt* v. *Cauldwell*, 3 Hun 26; *Martin* v. *Press Publishing Co.*, 93 App. Div. 531; *Shelby* v. *Sun Printing & Pub. Assn.*, 38 Hun 474; *Ferrand* v. *Brooklyn*

*Daily Eagle*, N. Y. L. J., Dec. 5, 1933, 241 App. Div. 752; *Spector* v. *News Syndicate Co.*, 280 N. Y. 346; *Foot* v. *Pitt*, 83 App. Div. 76.) IV. The entire statement of defendant on its face was fair criticism and comment on a matter of public concern and so nonactionable. (*Hoeppner* v. *Dunkirk Printing Co.*, 254 N. Y. 95; *Hills* v. *Press Co.*, 122 Misc. 212, 214 App. Div. 752; *Tanzer* v. *Crowley Publishing Corp.*, 240 App. Div. 203; *Hall* v. *Binghamton Press Co.*, 263 App. Div. 403, 296 N. Y. 714.) V. The four paragraphs, 24, 25, 29 and 33, which the Special Term and the Appellate Division refused to strike out, should have been stricken. VI. The Appellate Division properly struck out paragraphs 13 ,14, 15, 16, 17, 19, 20, 21 and 23.

FULD, J. In August, 1944, following his dismissal as Chairman of the War Price and Rationing Board for the Borough of The Bronx, defendant issued a statement to the press in the course of which he made certain remarks about plaintiff, who was then in charge of the Information Division of the Regional Office of Price Administration. Claiming that the statement falsely charges him (1) with being a communist, having communist affiliations and sympathies, and (2) with having improperly and unfaithfully performed his official duties, plaintiff sues for libel.

Whether or no the complaint states a cause of action is the problem presented by the first question certified by the Appellate Division upon defendant's appeal; the courts below have held that it does, and an affirmance must follow unless the publication is without defamatory import and, therefore, nonlibelous as matter of law. (*Balabanoff* v. *Hearst Consolidated Publications*, 294 N. Y. 351, 356; *Katapodis* v. *Brooklyn Spectator, Inc.*, 287 N. Y. 17, 21.) We must, accordingly, first ascertain whether the statement permits the construction urged and, if it does, whether it is actionable.

In his statement — a copy of which was sent to plaintiff's superiors — defendant asserts in substance that he had several times been summarily " fired " on flimsy and unfounded charges, that the ostensible reason for his dismissal was that " a number of units of a political pressure group, a left-wing organization " — which had sought to run various other defense

organizations for its own political advantage — had been thwarted by defendant in their efforts to " use the Price Panels for their own selfish political purposes," and had accordingly complained to defendant's superiors about his " non-cooperation." After answering this charge, the statement continues with a paragraph which forms the gist of the libel action: " I have never been in politics and am not up on that topic, so I can't figure it all out. Maybe the people can. I hope so, I do know that the publicity department of the Regional Office, which started this controversy and which I believe instigated the attack, is directed by Max Mencher, former Daily Worker employee, wizard public relations and stunt man of the Office of War Information, who is for the time being on the OPA payroll. He was campaign manager for Isidore Nagler, Communist candidate for Bronx Borough President in a recent election. Maybe that will help to add up the score."

It has long been the rule that words charged to be defamatory are to be taken in their natural meaning and that the courts will not strain to interpret them in their mildest and most inoffensive sense to hold them nonlibelous. (See, e.g., *Townsend* v. *Hughes,* 2 Mod. 150, 159; *Turrill* v. *Dolloway,* 17 Wend. 426, 428; *Cafferty* v. *Southern Tier· Publishing Co.,* 226 N. Y. 87, 93.) While in the present case there was no direct charge that plaintiff was a communist or had communist affiliations or that he had misused his public office, the statement, read against the background of its issuance, under the circumstances of its publication, is certainly susceptible of such a construction. As to the first, the assertion that plaintiff had formerly been employed by the *Daily Worker,* generally known to be the official publication of the Communist Party, and that he had acted as campaign manager for a communist ·seeking public office, may reasonably be understood as a charge that plaintiff was either a communist or that he co-operated in communistic activities and associated with communist figures. And, as to the second aspect, the statement — in reciting that plaintiff had been involved in an effort to remove defendant from public office because he, defendant, had opposed certain " units of a political pressure group," which, for their own selfish political advantage, sought to dominate the OPA — is capable of being read as a charge that plaintiff used his official

authority to assist outside groups in their endeavor to capture control of a public agency for their own private political purposes. We do not — indeed, we may not — determine that that is the only meaning to be placed upon the words used; to do so would encroach upon the province of the jury. It is enough that reasonable basis exists for such an interpretation. Once that is decided, it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader.

A charge that a public official misused his position — was guilty, in effect, of malfeasance in office — is of course defamatory. Whether it is likewise libelous to characterize one as communist or as communist sympathizer is the prime question for decision.

A writing is defamatory — that is, actionable without allegation or proof of special damage — if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him. (*Katapodis* v. *Brooklyn Spectator, Inc.*, *supra*, at p. 20; see, also, *Peck* v. *Tribune Co.*, 214 U. S. 185, 189–190; *Grant* v. *Reader's Digest Assn.*, 151 F. 2d 733, 734–735, certiorari denied 326 U. S. 797.)

Whether language has that tendency depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place. (See *Harrison* v. *Thornborough*, 10 Mod. 196, 197; *Sweeney* v. *Schenectady Union Pub. Co.*, 122 F. 2d 288, 290, affd. 316 U. S. 642; *Sydney* v. *Macfadden Newspaper Pub. Co.*, 242 N. Y. 208, 214; see, also, Gatley on Libel and Slander [3d ed.], p. 22.)

Today and in the recent past — whether or not communism stands for violent overthrow of government (cf. *Bridges* v. *Wixon*, 326 U. S. 135, particularly at p. 168 [STONE, Ch. J., dissenting]) — it is undeniable that for communism and its adherents and sympathizers, there has been widespread public aversion. Evidence of that antipathy is found not only in public opinion polls and in other studies (see, e.g., Riesman, Democracy and Defamation II, 42 Col. L. Rev., 1304–1305,

and publications there cited in notes 91, 92, 93, 97), but also in legislation and executive orders enacted and promulgated during the past several years which subject communists and their affiliates and sympathizers to loss of public office and private position and, in some cases, even to deportation proceedings. (See, e.g., Executive Order [1947], No. 9835, part V, par. 2, subd. f; part III, par. 3 [12 Federal Register 1935, 1938]; Selective Training and Service Act of 1940, § 8, subd. [i], in force through 1945, re-enacted June 29, 1946 [U. S. Code, tit. 50, Appendix, § 308, subd. (i)]; Emergency Relief Appropriation Act of 1943, § 9, subd. [f], § 11, subd. [b], [U. S. Code, tit. 15, §§ 721–728]; cf. Order of U. S. Civil Service Commission, dated May 29, 1940; see, also, Gibbons, Recent Legislative Attemps to Curb Subversive Activities in the United States, 10 Geo. Wash. L. Rev. p. 104, p. 107, note 9, p. 108, note 10, p. 123, note 79.) This being so, it is no answer that communists may function as a recognized political party.

Accordingly, having regard for the current public attitude — transitory though it may be — the courts have held that a false charge that one is a communist is basis for a libel action. (See *Kaminsky* v. *American Newspapers, Inc.*, 283 N. Y. 748; *Boudin* v. *Tishman*, 264 App. Div. 842; *Levy* v. *Gelber*, 175 Misc. 746; *Spanel* v. *Pegler*, 160 F. 2d 619; *Wright* v. *Farm Journal*, 158 F. 2d 977; *Grant* v. *Reader's Digest Assn.*, *supra*; *Gallagher* v. *Chavalas*, 48 Cal. App. 2d 52; *Toomey* v. *Jones*, 124 Okla. 167.) And it is of little moment whether the statement describes plaintiff as a communist or as one having communistic sympathies and affiliations, for, as has been observed, " any difference is one of degree only ". (*Grant* v. *Reader's Digest Assn.*, *supra*, p. 735, *per* LEARNED HAND, C. J.)

Defendant's statement about plaintiff consists not of any comment or criticism based upon facts accurately stated but of unequivocal and bald allegations of fact which the complaint stamps as false. Consequently, no question of fair comment is here involved. (See *Hoeppner* v. *Dunkirk Printing Co.*, 254 N. Y. 95, 105, 106; *Briarcliff Lodge Hotel* v. *Citizen-Sentinel Publishers*, 260 N. Y. 106, 118; *Kaminsky* v. *American Newspapers, Inc.*, *supra*.) And, by the same token, none of free speech, for, as has been said, " Free speech and free press are an established part of our democratic institutions, but both

are limited by the law of slander and libel. By word and by pen the official record and pronouncements of a public man may be discussed and criticised, condemned and even vituperated, but the facts cannot be perverted with impunity." (See *Caldwell* v. *Crowell-Collier Pub. Co.*, 161 F. 2d 333, 336; see, also, *Sweeney* v. *Schenectady Union Pub. Co.*, *supra*, at p. 291.)

Since, then, we may not say that the imputation of communism is as a matter of law not libelous, the jury may find the statement defamatory in that aspect as well as in the other — that plaintiff made improper use of his office. In upholding the complaint, however, we do no more than determine that it presents an issue of fact for a jury to decide. (*Balabanoff* v. *Hearst Consolidated Publications*, *supra*, at p. 356; *Katapodis* v. *Brooklyn Spectator, Inc.*, *supra*, at p. 21; *Sweeney* v. *United Feature Syndicate*, 129 F. 2d 904, 907.) As this court wrote in the *Katapodis* case (*supra*), p. 21, " We think it is not for us to say that the publication of such a piece of news did not hurt the plaintiffs by tending to deprive them of friendly association with a considerable number of respectable members of their community. We believe it is the right of the plaintiffs to have a jury say whether the false words did, in fact, so defame them."

We are thus brought to a consideration of the remaining certified questions which revolve about relief sought by defendant in reliance upon rule 103 of the Rules of Civil Practice. One — the second question certified upon defendant's appeal — concerns the propriety of the order at Special Term insofar as it denied defendant's motion to strike several paragraphs from the complaint. The other — certified upon plaintiff's appeal — involves the propriety of the order of the Appellate Division insofar as it struck out a number of other paragraphs. The latter question we answer in the affirmative, for the Appellate Division's disposition was correct. The remaining question, however, we cannot answer. The courts below had discretion to deny the motion, without passing upon the questions of law asserted, and this court has no power to review the exercise of such discretion. (Cf. *Braunworth* v. *Braunworth*, 285 N. Y. 151.) In such a case, lack of specification by the Appellate Division, as provided in section 603 of the Civil

Practice Act, that its decision was based solely upon a question of law, compels us to presume that its disposition was dictated by an exercise of discretion. That being so, it follows that there is no decisive question of law presented for our review and that the appeal from this portion of the order must be dismissed. (*Langan* v. *First Trust and Deposit Co.*, 296 N. Y. 60.)

The appeal from that portion of the order which affirms the denial of defendant's motion under rule 103 should be dismissed; otherwise, the order should be affirmed, with costs to plaintiff. The question certified upon plaintiff's appeal and the first question certified upon defendant's appeal are answered in the affirmative, the second question certified upon defendant's appeal is not answered.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Ordered accordingly.