**CHAPLIN v. NATIONAL BROADCASTING CO., Inc., et al.**

United States District Court
S. D. New York.
Sept. 28, 1953.

Supplemental Opinion Dec. 3, 1953.

Schwartz & Frohlich, New York City, Louis D. Frohlich, Arthur H. Schwartz, David H. Horowitz, New York City, of counsel, for plaintiff.

Edgar H. A. Chapman, New York City, Walter R. Barry, Carleton G. Eldridge, Jr., New York City, of counsel, for defendants.

DIMOCK, District Judge.

Plaintiff, Charles Spencer Chaplin, a nationally prominent movie actor and film producer is suing the defendants, Hy Gardner, a newspaper columnist and radio commentator, and National Broadcasting Co., Inc., a radio broadcasting company, for the alleged injury caused him by a series of syndicated articles written by defendant Gardner and published in newspapers throughout the country and by references to plaintiff by defendant Gardner in two of his weekly radio programs which were broadcast by defendant National Broadcasting Co., Inc. One of these broadcasts involved the publication over the air waves of a telephone conversation between defendant Gardner and plaintiff's butler which had been tape recorded by means of wire tapping. The second broadcast complained of was a report by defendant Gardner of a telephone conversation he had had with plaintiff, and a recording of the results of a wire tapping of that conversation.

The complaint is in three counts. In the first count, plaintiff alleges a conspiracy to maliciously and unjustifiably injure him; in the second, libel; and in the third, a violation of his right of privacy. Defendants have moved to dismiss each of these three counts.

*The Count for Unjustifiable Injury.*

In the first count of his complaint, plaintiff has set forth a series of allegedly illegal acts as part of a deliberate scheme to harm him. Defendants, contending that each of the acts alleged constitutes a separate cause of action, have moved pursuant to Rule 41(b) to dismiss the first count for failure to comply with the Federal Rules of Civil Procedure, 28 U.S.C.A.—particularly Rule 10(b) which requires that "[e]ach claim founded upon a separate transaction or occurrence * * * shall be stated in a separate count * * * whenever a separation facilitates the clear presentation of the matters set

forth." Defendants have also moved, in the alternative, for an order to make the complaint more definite pursuant to Rule 12(e) by requiring plaintiff to state each of the acts complained of in a separately numbered count.

Since the decision of the Court of Appeals of this Circuit in Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, disposes of this motion, it is unnecessary to discuss the contentions in detail. There, as here, the plaintiff was relying on a prima facie tort theory— that intentional and unjustified injury is actionable.[1] There too, plaintiff set forth in a single count a series of acts as part of a plan to injure him. Judge Swan said for the Court: "All the acts are alleged to be connected by the common purpose and directed to the common end of driving the plaintiff from the theatrical world. We do not think that a separation into counts is necessary to facilitate 'the clear presentation of the matters set forth.'" 133 F.2d 187, 190. I follow that ruling.

### The Count for Libel.

Defendants have moved to dismiss the second count—the libel claim—for failure to state a claim upon which relief can be granted. Defendants contend that the allegedly defamatory publications are not libelous per se in the sense that they are not of such character that they can be supported in the absence of a special damage plea. To reach this conclusion, defendants argue that the newspaper articles are not included in the libel count—that only the two radio references to plaintiff are complained of in the libel count—and that these broadcasts were not libelous per se.

■ Under the very liberal principles of the New York libel law, whether a publication is libelous per se is generally a question of fact for the jury. The court's function ends when it has been determined that reasonable men might find that the words were sufficient to bring the plaintiff into disrepute and subject him to hatred and contempt. See Mencher v. Chesley, 297 N.Y. 94, 75 N.E. 2d 257; Balabanoff v. Hearst Consolidated Publications, 294 N.Y. 351, 62 N.E.2d 599; Katapodis v. Brooklyn Spectator, Inc., 287 N.Y. 17, 38 N.E.2d 112, 137 A. L.R. 910. The first broadcast complained of contained the following statements: "I am now going to call Charlie Chaplin who two weeks ago made a statement to a French Communist paper. Chaplin issued a general denial of the fact. The editor of the paper says he gave it. Now I am going to get him on the telephone and give him another chance to deny it."

■■ The meaning of language and its effect on the opinion of the community depend upon the spirit of the times. See Mencher v. Chesley, 297 N. Y. 94, 100, 101, 75 N.E.2d 257, supra; Sydney v. MacFadden Newspaper Pub. Corp., 242 N.Y. 208, 214, 151 N.E. 209, 44 A.L.R. 1419. In times of extreme fear and suspicion, inflammatory inferences may be drawn from words which in calmer times sound completely innocent. It is impossible to ignore the repugnance and loathing which association with Communist organizations arouses today in the public mind and the widespread suspicion of those who evade disclosure or refuse to answer questions about such alleged connections. I cannot say, therefore, that as a matter of law reasonable men could not find that this publication in and of itself was sufficient to bring plaintiff into disrepute and subject him to hatred or contempt. See Spanel v. Pegler, 2 Cir., 166 F.2d 298; Grant v. Reader's Digest Ass'n, 2 Cir., 151 F.2d 733.

■ Since I have held that the words themselves are sufficient to raise a question for the jury as to whether they are

---

1. See American Guild of Musical Artists v. Petrillo, 286 N.Y. 226, 36 N.E.2d 123; Opera on Tour, Inc. v. Weber, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267; Holmes, "Privilege, Malice and Intent," 8 Harvard L.Rev. 1.

libelous per se it is unnecessary to consider the innuendoes. The notion that one who unnecessarily pleads an innuendo must substantiate it has been repudiated. Morrison v. Smith, 177 N.Y. 366, 369, 69 N.E. 725.

Since it is my view that the defamatory effect of the radio broadcasts raises a jury question it is unnecessary for me to pass on defendants' contention that the libel claim in the second count does not embrace the newspaper articles.

### The Count for Violation of Privacy.

In his third count, plaintiff alleges that defendants violated his right of privacy by the unauthorized use of his name in the newspaper articles and radio broadcasts and by the wire-tapped recording of two telephone calls to plaintiff's home. Defendants have moved to dismiss this count for failure to state a claim upon which relief can be granted.

Plaintiff primarily relies on the law of the three states which have adopted a statutory right of privacy,—New York, Virginia, and Utah. Both the Virginia provision, Title 8–650, Code of Va. (1950), and the Utah statute, § 103–4–9, Utah Code Ann.1943, substantially follow section 51 of the New York Civil Rights Law in defining the conduct which constitutes an unlawful invasion of privacy. See Donahue v. Warner Bros. Pictures, 10 Cir., 194 F.2d 6, 11; Section 51 of the New York Civil Rights Law, McK.Consol.Laws, c. 6, provides for the maintenance of a suit for an injunction and damages by "[a]ny person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without * * * written consent * * *." Defendants contend that plaintiff's name was not used "for the purposes of trade" within the meaning of this statute. Generally, the dissemination of news or the reporting of matters of public in-

terest has been held not to be for trade purposes, while fiction or fictionalized information has been held to fall within the New York statute.[2] In Sidis v. F–R Pub. Corporation, 2 Cir., 113 F.2d 806, the Court of Appeals of this Circuit dismissed a claim for invasion of privacy under the New York statute on the ground that the publications were limited to the "unvarnished, unfictionalized truth." Id., 113 F.2d at page 810. Thus, if there were no allegation of falsehood here, the Sidis case could control. The case of D'Altomonte v. New York Herald Co., 208 N.Y. 596, 102 N.E. 1101, modifying, without opinion, 154 App.Div. 453, 139 N.Y.S. 200, however, disposes of plaintiff's claim under the New York statute, at least as to the newspaper articles. As appears from the Appellate Division report in that case, a newspaper published what purported to be a short story written by the plaintiff about an adventure in Africa. The story was preceded by a biography of the plaintiff who was a prominent newspaper correspondent and lecturer on Africa. The plaintiff, alleging that the story was falsely attributed to him, sued under the New York statute for an illegal invasion of his privacy. The New York Court of Appeals held the claim bad for failure to state a cause of action.

Plaintiff argues that the radio broadcasts were purely for entertainment or amusement, and therefore for commercial purposes like fictional presentations, rather than for the reporting of information of public interest. In essence, this seems to be an argument that matters which ought not to be published as news are not news at all. Plaintiff is a prominent public figure whose activities are of general public interest. In that sense, the broadcasts were informational and therefore not "for the purposes of trade" within the meaning of the New York statute. Beyond that,

2. For an extensive and scholarly discussion of this line of distinction in the New York cases, see Gautier v. Pro-

Football, Inc., 278 App.Div. 431, 106 N.Y.S.2d 553, affirmed 304 N.Y. 354, 107 N.E.2d 485.

courts cannot and should not pass judgment on the value of particular news items. See Sidis v. F–R Pub. Corporation, 2 Cir., 113 F.2d 806, 809.

Defendants contend that the Virginia statute protects only residents of that state. This is true of the penal provision but it is not so clear that the civil provisions protect only residents. Since, however, the Virginia law has the same commercial purpose restriction as the New York law and the claim under the Virginia statute falls on that ground, it is unnecessary for me to pass on the residence point.

The claim under the Utah statute fails for the same reason.

I turn then to the recorded wire-tappings, both of which seem to have taken place in New York. There is no common law right of privacy in New York. Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 N.E. 442, 59 L.R.A. 478. Therefore, the wire-tapping cause of action must, if it is to stand, find support in section 51 of the New York Civil Rights Law. Clearly plaintiff cannot recover for the recording of his butler's conversation. The statutory right is purely personal. As to the recording of plaintiff's own voice, even if it could be successfully argued that this was a picture of his voice within the meaning of "picture" in the statute, it cannot be said to have been "used \* \* \* for the purposes of trade". The same exception for news which I applied to the use of plaintiff's name applies here to the use of his voice.

The complaint alleges nationwide publication of both the articles and the radio broadcasts. Therefore, the laws of many states may be applicable. A large number of. states now recognize a common law right of privacy which is broader in scope than the statutorily defined right discussed above. See Feinberg, "Recent Developments in the Law of Privacy," 48 Columbia L.Rev. 713. If a claim is stated under any applicable law, this count should not be dismissed.

See Neiman-Marcus v. Lait, D.C.S.D.N. Y., 13 F.R.D. 311, 315.

The same privilege which has been accorded the use of names in connection with dissemination of information in New York by the judicial holdings that it is not a use "for the purposes of trade" exists in the states which recognize a broader common law right of privacy either on the ground of the paramount public interest in the reporting of events or under a doctrine of waiver by prominent public figures or those involved in events of public interest. It is true, however, that these same cases emphasize either the truthfulness of the allegedly injurious publications or their sympathetic representation of the plaintiff. See Sidis v. F–R Pub. Corporation, 2 Cir., 113 F.2d 806, 807, 809; O'Brien v. Pabst Sales Co., 5 Cir., 124 F.2d 167, 169; Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491, 494, 496; Jones v. Herald Post Co., 230 Ky. 227, 18 S.W.2d 972, 973. On the other hand, in the case of Jones v. Herald Post Co., supra, a statement was falsely attributed to the plaintiff in a newspaper report of an event of public interest and the Court of Appeals of Kentucky held that her privacy had not been illegally invaded. Unless, therefore, counsel for plaintiff produce a case, as my research has failed to do, that shows that under the applicable law of some state the revelations about plaintiff in the instant case violated his legally protected right of privacy, I shall have to dismiss plaintiff's privacy claim.

Finally, plaintiff urges that the doctrine of Haelan Laboratories v. Topps Chewing Gum, 2 Cir., 202 F.2d 866, which recognized a nonstatutory "right of publicity" in New York supports the third count of his complaint. Rather than recognizing the legal right to protection against the injury to feelings which results from the commercial appropriation of elements of personality, that "right of publicity" recognizes the pecuniary value which attaches to the names and pictures of public figures,

particularly athletes and entertainers, and the right of such people to this financial benefit. It is analogous to the exclusive right to use a trade-name or to dispose of the good-will of a business. Even under this doctrine, however, plaintiff's third count cannot succeed. The same requirement of commercial use which limits the New York right of privacy inheres in the "right of publicity". It is not every public use of a prominent person's name that he has a right to exploit financially. It is the unauthorized use in connection with the sale of a commodity—for advertising purposes—which the Topps Chewing Gum case recognizes as an actionable wrong under New York law. Plaintiff seems to argue that entertainment is the commodity being sold through the use of his name and voice in the radio broadcasts. That contention is no more persuasive under this theory than it was under the privacy theory.

Nothing in defendant's motion raises the question whether plaintiff could recover damages on the count for defamation if there were also a recovery on the first count for unjustifiable injury. That question, therefore, has not been considered by me.

Defendants' motions to dismiss the first two counts are denied. The motion to dismiss the third count will be granted unless within 20 days of the date of this opinion counsel for plaintiff produces a reference to applicable law of states other than New York, Virginia and Utah which requires a different result.

### Supplemental Opinion

This is a supplemental opinion on defendants' motion to dismiss the third count of this complaint. Plaintiff, a nationally prominent entertainer, is suing for the alleged injury caused him by the publication of certain newspaper articles and radio broadcasts. In the third count of his complaint, plaintiff has alleged a violation of his right of privacy. To establish this claim, he relies primarily on two radio broadcasts only one of which is material here. Defendant Gardner, a newspaper columnist and radio commentator, conducts a weekly radio program, "Hy Gardner, Calling," in which he reports on the activities of celebrities like plaintiff. One of the features of this program is a telephone interview with a prominent figure. On one of these broadcasts, after making some less than flattering references to plaintiff, defendant Gardner broadcast a tape recording of a long-distance telephone conversation which he had had with plaintiff. Gardner had telephoned plaintiff at his home in California and, by means of wire-tapping at the New York end, the conversation had been tape recorded without plaintiff's knowledge or consent.

In my earlier opinion on defendant's motion to dismiss the third count of this complaint I stated that I would grant the motion unless within 20 days of the date of the opinion counsel for plaintiff produced a reference to applicable law of states other than New York, Virginia and Utah under which the revelations about plaintiff in the instant case violated his legally protected right of privacy. Counsel for plaintiff has within the prescribed period submitted some references. I do not find that the cases cited require a different result.

Plaintiff contends that the decision of the Supreme Court of Kentucky in Rhodes v. Graham, 238 Ky. 225, 37 S.W. 2d 46, established the proposition that wire-tapping was an invasion of a common-law right of privacy. Plaintiff further argues that, since a recent California opinion on the right of privacy cited and discussed Rhodes v. Graham, wire-tapping is recognized as a violation of the right of privacy under California law. Assuming that there were sufficient contacts with the State of California to make its law applicable here, and assuming further that California has adopted the doctrine of Rhodes v. Graham, plaintiff's cause of action must stand or fall on that doctrine.

In Rhodes v. Graham, the plaintiff's personal telephone conversa-

tions were intercepted by third persons without the knowledge or consent of any of the parties to the conversations. The court likened the invasion to eavesdropping, which had been a crime at common law, secret listening by a stranger to a private conversation. In the case at bar, defendant Gardner who arranged for the wire-tapping was a party to the conversation. He did not secretly listen to a conversation addressed to the ears of another. Thus, unless it is an invasion of a legally protected right of privacy for one party to a telephone conversation to reveal the content of that communication, wire-tapping by one party to a telephone conversation for the purpose of such a revelation cannot be an illegal invasion of privacy. It is unthinkable that the revelation of the content of a telephone conversation by one of the parties to it violates any legally protected right of privacy. Aside from a natural emotional revulsion which the use of such a device arouses, the fact of wire-tapping adds nothing to plaintiff's privacy claim.

Therfore, and for the reasons discussed in my prior opinion, the motion to dismiss the third count of this complaint is granted.