## Solosko v. Paxton

*Fike & Cascio*, for plaintiff.
*Walker & Kimmel*, for defendant.

LANSBERRY, P. J., August 9, 1954.—In this action in trespass for slander the jury returned a verdict in favor of plaintiff. Motions for judgment n. o. v. and a new trial are now before the court for determination. The legal question presented is readily apparent from a brief review of the record and evidence.

Alexander Solosko, plaintiff, was born in Latvia in 1906, came to the United States in 1912, was educated in the public schools of New York City and later was graduated from college and medical school. In 1933, being in the United States Army, he was assigned to duty in Somerset County, Pa., and located near Salisbury where he met and later married Evelyn Harding and permanently located in Salisbury where he, his wife and their three children reside. He practices his profession of medicine in Salisbury and Meyersdale, at which latter place he is chief of staff of the local hospital and where he not only cares for a large number of patients but is active in various community activities. He said he was born in the Hebrew faith, stoutly denied he is a Communist or atheist, stated he has never been a Communist, never engaged in communistic activities and never advocated the overthrow of the Government by force or violence.

George R. Paxton, defendant, was born in the United States in 1901, was educated in the public schools and was graduated from college, taught a number of terms of school, came to Meyersdale, Somerset County, in 1934, met and married Mary Alice Hay and became district representative of the Eastern States Farmers' Exchange. He permanently located in Meyersdale where he, his wife and their children

now reside. For a number of years he, attended to his business interests, participated in the worthwhile community activities, is now serving on the borough school board, and for a number of years was and is both a lay leader and Sunday School teacher in the Meyersdale Methodist Church.

At the trial plaintiff introduced evidence in support of his allegations that on three separate occasions defendant called or referred to plaintiff as a Communist. Defendant denied the allegations and the truth of the testimony as to each and every occasion. The jury returned a verdict in favor of plaintiff and fixed the amount of the damage at $10,000.

Evidence as to the first occasion is that on either December 7 or 14, 1952, while teaching the Sunday School class and in the course thereof, George R. Paxton made the statement that Doctor Solosko is a Communist, the community should do something about it, or if not those precise words, then words similar and to the identical effect.

The evidence as to the second occasion is that on December 19, 1952, at a covered dish supper in the Methodist Church, George R. Paxton said, in either the identical words or words similar and in effect, that Doctor Solosko is from Russia; he is a Communist; he is nothing but a ruthless person.

As to both these occasions a single witness for plaintiff testified positively as to the statements being made; a number of witnesses for defendant testified they were present at either one or both of the two meetings and that they did not hear any such statements made by defendant.

The third occasion occurred on the evening of January 8, 1953, at the Meyersdale High School auditorium where a meeting of the Community Hospital contributors was in progress. Near the conclusion of the meeting Mr. and Mrs. Paxton left the auditorium and

went to the hallway: one of the Paxtons asked to see Dr. and Mrs. C. C. Glass, both of them professional people who for many years operated the local hospital which they in fact had established years ago. Both Doctor and Mrs. Glass left the meeting and came to the hallway where they engaged in a brief conversation with Mr. and Mrs. Paxton. Reference was made in the conversation about a bill for professional services due from Mr. Paxton to Doctor Glass and some words to the effect that Mr. Paxton did not want the bill to get into the hands of Doctor Solosko, who was connected with the new hospital and who, Mr. Paxton felt, would injure his credit at the new hospital. According to both Doctor and Mrs. Glass, Mr. Paxton then said Doctor Solosko is a Communist; I have had him investigated. Mrs. Glass then said that that is fantastic and the conversation terminated.

The fundamental question and controlling issue here presented is whether calling a person a Communist is slander per se.

Slander is "defamation by words spoken", that is, "the speaking of base and defamatory words which tend to the prejudice of the reputation, office, trade, business, or means of getting a living of another": Williams v. Kroger Grocery & Banking Co., 133 Pa. Superior Court 1, 53 C. J. S., Libel and Slander, §31.

Generally speaking, damages for defamatory words when spoken are not recoverable in the absence of proof of special damages. Among the well-established and recognized exceptions to this general rule are words, falsely spoken, imputing the commission of a crime involving moral turpitude, for which the party might be indicted and punished. Such words are held to be slanderous per se and proof of special damages in those instances is not required to support a recovery: A. L. I. Restatement of the Law of Torts, §571, and cases cited in the Pennsylvania annotations thereto.

It is for the jury to determine whether the alleged defamatory statement was used and understood in the sense charged after the trial court has preliminarily determined that the words used in the alleged defamation can be fairly and reasonably construed and understood as supporting the meaning attributed to those words by plaintiff: McAndrew v. Scranton Republican Publishing Company, 364 Pa. 504, 511, 512. Bearing in mind that Meyersdale Borough is a progressive community of patriotic, well-informed and dependable residents and citizens of approximately 3,200 people, that plaintiff, Doctor Solosko, is a well-known physician and surgeon, chief of staff of the local hospital, prominent in various community activities, and his family likewise well-known and respected; that George Paxton, defendant, is a well-known business man, a public official, prominent in various community activities, member of the local school board, and his family likewise well-known and respected, the words of the alleged statement can only be construed by a court today as capable of supporting the defamatory meaning attributed to those words by plaintiff. The effect of calling or designating any resident of Somerset County, Pa., a Communist in this day is to characterize him or her as a person to be unworthy of citizenship, to place him or her in disrepute and to cause others to fear and avoid the subject of that designation. Accordingly, the court was bound to submit that portion of the whole issue to the jury.

Prior to the Act of December 21, 1951, P. L. 1712, sec. 1, 18 PS §3811, membership in the Communist Party in Pennsylvania was not a criminal offense. By the Act of 1951, membership in the Communist Party of the United States is a felony. The pertinent section of the act is as follows:

"Whoever, therefore, being a member of the Communist Party of the United States or any other or-

ganization, no matter how named, whose object or purpose is to overthrow the Federal or State government by force and violence, knowing the revolutionary object or purpose thereof, or, whoever participates in the revolutionary activities of the Communist Party or any other organization with the same revolutionary purpose, knowing the revolutionary object or purpose thereof, is guilty of a felony, and, upon conviction thereof, shall be sentenced to imprisonment for not exceeding twenty (20) years, or fined not exceeding ten thousand dollars ($10,000), or both."

Assuming, as we do, that the Act of 1951 is constitutional, the provisions of the act define an offense chargeable by indictment, punishable by imprisonment and a crime of moral turpitude.

Defendant urges upon us the proposition that it is only membership in the Communist Party which is the offense designated in the act and since defendant did not charge plaintiff with being a member of the Communist Party no criminal offense was charged, hence the act is not applicable. Neither the cases nor the common experiences of mankind support this reasoning. To say a person is a Communist connotes he is a member of the Communist Party and these words when spoken about another person in Meyersdale can leave only one impression, that is, a member of the Communist Party: Americans for Democratic Action et al. v. Meade et al., 72 D. & C. 306; Mencher v. Chesley, 297 N. Y. 94, 75 N. E. 2d 257.

Counsel for defendant further urges upon us the case of McAndrew v. Scranton Republican Publishing Co., 364 Pa. 504, wherein the Supreme Court opinion states at page 514: "To say a man is a Communist or a Socialist is not to defame him." That statement is obiter dicta. The alleged defamatory statement in that case was "we all have to have a little communism today" and not the statement that plaintiff was a

Communist; obviously the court was not there called upon to decide whether the words calling another a Communist are slanderous words per se. Moreover, the alleged libelous statement was made October 29, 1946, when "the relations between the United States were very friendly and the public mind had not then identified communism with Russian imperialism and terrorism". During the five years between the time of the alleged defamatory statement and the approval of the act of assembly, noticeable changes between the two nations and the public mind as well have taken place. It is hardly likely that the obiter dicta would have been included in that opinion if that opinion had been written after the Act of 1951.

An examination of the cases discloses the conclusion herein reached is the prevailing view in most jurisdictions: 33 A. L. R. 2d 1196.

At the trial of the issue and after extended argument and careful consideration we are of the opinion that the alleged statements are slanderous per se and the jury having found the fact of the making and publishing of one or more of the statements, the motion for judgment n. o. v. must be refused.

All of the reasons assigned for a new trial have been examined and considered. Only one phase of the assigned reason, that the verdict is against the weight of the evidence, remains for extended consideration. The jury returned a verdict in favor of plaintiff in the amount of $10,000. The evidence supports the verdict in favor of plaintiff but the amount thereof, under all the circumstances presented in this record, is excessive. This does not necessitate setting aside the verdict. Rather, this record requires the court to reduce the amount of verdict conditioned upon plaintiff filing a remittitur for the excess or in the alternative the granting of a new trial: Jones et ux. v. Stiffler, 137 Pa. Superior Ct. 133, 137.

In accordance with the foregoing opinion, we enter the following

*Order*

Now, August 9, 1954, the motion for judgment n. o. v. is refused, the motion for a new trial is disposed of as follows: the verdict of the jury is reduced to the sum of $3,500, conditioned that plaintiff will within 30 days from this order file a remittitur in the amount of $6,500, the excess portion of the verdict, in which event the prothonotary shall enter judgment on the verdict upon payment of the usual jury fee; if the remittitur accordingly is not filed as herein specified, the motion for a new trial will be considered allowed and in that event the prothonotary will list the cause for retrial.