ROMAN GURTLER, Plaintiff, *v.* UNION PARTS MANUFACTURING CO., INC., Defendant.

Supreme Court, Special Term, New York County, December 2, 1954.

*Minot & Zasloff* for defendant.

*Robert Leon Horn* for plaintiff.

FRANK, J. This is a motion to dismiss the complaint for legal insufficiency pursuant to rule 106 of the Rules of Civil Practice.

The action is for slander. The core of the question is whether a false charge that one is a communist is slanderous per se. The complaint alleges in substance that the defendant, through its president, falsely accused the plaintiff of being a communist. It is claimed that the defamation occurred in the presence of other employees at the defendant's place of business, where for twelve years plaintiff was chief engineer.

In actions for defamation greater latitude is permitted in pleading than in other types of litigation (*Weekes* v. *Westchester Newspapers,* 115 N. Y. S. 2d 418; *Shore Poster Adv. Corp.* v. *Richmond Poster Adv. Co.,* 104 N. Y. S. 2d 1009, 1014), and the pleading should be construed liberally in favor of its sufficiency (*Condon* v. *Associated Hosp. Service of N. Y.,* 287 N. Y. 411, 414).

The complaint under attack asserts that plaintiff is an engineer by profession and has worked for defense plants producing tools and implements for the Government; that as a result of the defamation he will be irreparably damaged in his profession. No special damages are alleged.

It has been suggested that there is a distinction between being a communist and being a member of the Communist party. If there is a distinction, it is without a difference. An authoritative American dictionary (Webster's New Int. [2 ed.], p. 541) defines a communist as " 3 A member of the Communist party in any country ". It is too often overlooked that in 1918, by official edict, the bolsheviki changed their name to the Communist party, but did not alter the creed that advocates the use of force and violence to gain political control and overthrow capitalism. Whether one is falsely called a communist rather than a member of the Communist party, however important the difference may be for the purposes of applying statutory regulation, is a subtlety completely lost upon the public and of no consequence in an action for defamation. The distinction between an " anarchist " and " criminal anarchy " was similarly treated (*Von Gerichten* v. *Seitz,* 94 App. Div. 130).

The law is settled that a false written accusation that one is a communist is libelous per se (*Mencher* v. *Chesley,* 297 N. Y. 94, 101; *Grant* v. *Readers Digest Assn.,* 151 F. 2d 733, 735, certiorari denied, 326 U. S. 797; *Spanel* v. *Pegler,* 160 F. 2d 619, 621; *Levy* v. *Gelber,* 175 Misc. 746).

The decisions are not so definitive where the defamation alleged is by the spoken word. Research fails to disclose an appellate determination decisive on the question. In *Remington* v. *Bentley* (88 F. Supp. 166), it was held to be slander per se to charge one with being a communist. Contrariwise are *Krumholz* v. *Raffer* (195 Misc. 788); *Gross* v. *Mallamud* (200 Misc. 5), and *Keefe* v. *O'Brien* (203 Misc. 113).

Three groups of the spoken word are generally regarded as slanderous per se: (1) a charge of a loathsome disease; (2) a charge of a punishable crime; (3) a charge which tends to injure one in his trade, occupation, business or profession (Seelman

on Law of Libel and Slander, pp. 599–601; Restatement, Torts, § 570).

The determination here made will be predicated upon consideration of the third subdivision, i.e., a false charge which tends to injure one in his trade, occupation, business or profession.

Among the elements which determine whether a defamation has been perpetrated are current public opinion, the geographic area wherein the expression occurs, the audience reached by the utterance and other factors which tend to subject the alleged victim to the scorn, obloquy and hatred of others (*Mencher* v. *Chesley, supra*).

To these, public policy should be added. The public policy of one generation may not, under changed conditions, be that of another. It has a variable and ephemeral quality unless determinable, in given circumstances, from statutory provisions (*Patton* v. *United States,* 281 U. S. 276, 306). No purpose will be served by detailing all the executive orders, the legislation and decisional determinations on the subject of communism or communists. Reference to a few will suffice to illustrate our public policy, both national and State.

The United States Supreme Court has held that communism teaches the use of force to gain political control and advocates the overthrow of our Government by force and violence (*Carlson* v. *Landon,* 342 U. S. 524, 535, 536; *Dennis* v. *United States,* 341 U. S. 494).

In 1947, the President, by executive order 9835 (Code of Fed. Reg., 1947 Cum. Supp., tit. 3, pp. 129–133), created the Loyalty Review Board and authorized action against persons disloyal to the Government. One of the criteria of disloyalty, and a ground for prohibiting public employment, is membership in a subversive or communist organization.

The Internal Security Act became law in 1950 (U. S. Code, tit. 50, ch. 23, § 781 *et seq.*). Section 781 thereof, called " *Congressional finding of necessity* ", declares (1) that " There exists a world Communist movement  *  *  *  whose purpose it is, by treachery, deceit, infiltration into other groups (governmental and otherwise), espionage, sabotage, terrorism and any other means  *  *  *  to establish a  *  *  *  dictatorship in the countries throughout the world ". In addition to defining other activities constituting disloyalty to our country by the communist conspiracy, the section concludes (15) " The Communist organization in the United States  *  *  *  present a clear and present danger to the security of the United States and to the

existence of free American institutions, and make it necessary that Congress * * * enact appropriate legislation * * * designed to prevent it from accomplishing its purpose in the United States.''

With reference to the instant application, it is significant that in addition to prohibiting the employment of a member of a communist organization in nonelective public office, the act bars the employment of such a person in any defense facility. The complaint (par. 6) alleges that the plaintiff had been employed in a defense plant engaged in producing tools and equipment for the United States.

In 1951, New York State (L. 1951, ch. 233) provided for the removal from public office of persons holding membership in subversive organizations including, by obvious reference, the Communist party. The Board of Regents (L. 1954, ch. 201, Education Law, § 236), is authorized to revoke the television charter of any nonprofit organization which employs communists. Since 1953, membership in an organization designated as subversive by the Attorney-General is deemed so odious that its members are denied the right to occupancy in certain public housing projects (U. S. Code, tit. 42, § 1411c; *Matter of Peters* v. *New York City Housing Auth.,* 307 N. Y. 519).

Public opinion, differentiated from public policy, is the common opinion manifested by mass sentiment, judgment or conclusion. It is of the ethos of a people. It does not always remain static, but, like an air current, flows with varying force in shifting direction, sometimes benignly as a zephyr, sometimes with the devastating fury of a hurricane. The current of contemporary thought in this country with regard to communism, communists and the Communist party has fully developed.

Words considered laudatory at one time and place may be classified as defamatory at another (*Sweeney* v. *Schenectady Union Pub. Co.,* 122 F. 2d 288, 290; *Mencher* v. *Chesley, supra*). At other times and in other places the designations Nazi, Fascist, and Ku Klux Klansman each attained a high degree of approbation and esteem among certain people. Here and now, however, each is generally recognized as a term evoking contempt.

However heedlessly accepted in other democracies and fearfully respected in benighted regions of the world, the term communism has come to be recognized as opprobrious throughout this nation. By every means of mass communication, communism has been revealed in all its degenerate facets. We have taken its measure and know it for its godlessness and its menace to the free spirit and mind of man. A desperate faith in its false

panaceas, clung to by some in former years, has yielded to a full awareness of its evil and its peril.

Quite apart from the legal bar to employment in public offices, defense facilities and sensitive industries, communists are taboo in other areas of employment. Organized labor seeks to purge them from its ranks. In offices and stores, they are undesirables. In most, if not all, of the learned professions, a communist is a pariah.

For an engineer " engaged in the manufacture and sale of machinery, tools, parts and equipment " to be falsely branded a communist may deprive him of employment opportunities in the reputable establishments in that industry.

It must therefore be held that the false utterance alleged in the complaint is slanderous per se. The motion to dismiss is denied.