Dte, J.
(concurring in part and dissenting in part). We concur with what has been said in the majority opinion respecting the sufficiency of the complaint to allege a cause of action (Mencher v. Chesley, 297 N. Y. 94); that on this record the defendant James J. Farley was not improperly deprived of his right to participate in the selection of the jury, since we deem his rights were adequately protected by counsel ostensibly clothed with authority to represent him; we agree that the judgment rendered against the defendant James Gf. Donovan should be reversed and the complaint as to him dismissed (Civ. Prac. Act, § 51, subd. 3; Gregoire v. G. P. Putnam’s Sons, 298 N. Y. 119); and we also agree that the cross appeals taken by the plaintiffs from so much of the judgment as reduces the jury verdict should be dismissed, as they are not parties aggrieved within the meaning of section 557 of the Civil Practice Act (cf. Dudley v. Perkins, 235 N. Y. 448).
In certain other respects we feel obliged to herewith voice our disagreement. But first a word as to the ease generally.
This is an action for libel. It is a by-product of the sharply fought 1951 primary election contest for the Democratic leadership of the 8th Assembly District, New York County, which for years had been dominated and controlled by the late Congressman Vito Marcantonio. The plaintiff Stella was the candidate of a Democratic faction opposing the re-election of James J. Farley, the incumbent for the Democratic party position of executive member. The plaintiff Anne K. Toomev was a Democratic worker belonging to the faction supporting Stella. The defendants were admittedly the editor, proprietor and publishers of a campaign document entitled the “ Yorkville Democrat ’ ’. It was in the form and style of a tabloid newspaper, used as a throwaway in the closing days of the campaign. The one issue printed extolled in highly complimentary terms the personal capabilities and qualifications of the candidate Farley and urged the voters to continue him in office and to *85 reject the candidacy of his opponent Stella by making allegedly false allegations of communism in a manner which is fully set forth in the majority opinion and need not be repeated here.
The complaints of both Toomey and Stella alleged that the defendants thereby meant and intended to mean that the plaintiffs were members of the Communist party and that said words were so understood by the readers of the said newspaper.
At the trial the defendants made no effort to establish that the plaintiffs were Communists, but freely conceded that they were not, and that they did not intend to libel the plaintiffs as active Communists or fellow-travelers, the defense being that the alleged libelous material was no more than fair comment on a political fact. Notwithstanding such concession, the trial court was justified in submitting to the jury the issue of whether the complained of material was libelous in fact (Mencher v. Chesley, supra; Sydney v. Macfadden Newspaper Pub. Corp. 242 N. Y. 208, 214; Cafferty v. Southern Tier Pub. Co., 226 N. Y. 87; More v. Bennett, 48 N. Y. 472). The defense of fair comment affords no protection to one who makes false and untrue statements against a public officer or one seeking public office (Bingham v. Gaynor, 203 N. Y. 27; cf. Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95), because the writings on their face would be read by the ordinary person as meaning that the plaintiffs were Communists and fellow-travelers. No connection between plaintiffs and former Congressman Yito Marcantonio was shown other than that he had been the regular Democratic nominee and that they had supported him in that capacity. For all practical purposes, the jury had only to determine the issue of damages. In this connection the plaintiffs and their principal witness Brennan were allowed to testify that they were respectively members in good standing in the Catholic church. ¥e agree that it cannot reasonably be said that, on this record, such showing — standing by itself — constitutes reversible error, since church membership of whatever creed is generally regarded as an attribute of good character and respectability. However competent such a showing may be for that purpose, its allowance here was on the issue of damages on the theory that membership in the Catholic church would be £ £ presumptive of opposition” to communism. While we do not assign legal error in this case, we feel that such ruling nonetheless impinged *86 on traditional American policy against permitting race, color and creed to become a factor in the trial of cases (Bowen v. Mahoney Coal Corp., 256 App. Div. 485; Saunders v. Champlain Bus Corp., 263 App. Div. 683; Abbate v. Solan, 257 App. Div. 776; People v. Castellano, 273 App. Div. 978; Malinski v. New York, 324 U. S. 401; People v. Esposito, 224 N. Y. 370). However, the religious testimony did not stop with the showing of church membership — as it should have done — but was allowed to continue over defendants’ objection, in order to permit the plaintiffs to spread on the record irrelevant details concerning their activities and practices as church members with special reference to their faith and devotion and their meticulous observance at all times and occasions of its teachings and tenets as well as their extensive and active lay participation in various collateral church activities. The court allowed this recurring and repetitious self-appraisement on the theory that it could be considered on the question of damages stating ‘ ‘ it is a matter of common knowledge, that the official Catholic position is opposed to the Communist Party and that a person who is sincere in his profession of Catholicism would have that opposition ”.
No one, of course, questions the validity or correctness of that pronouncement as a statement of church policy, for it is generally understood that not only the Catholic church, but all other churches in America affiliated with or belonging to recognized religious groups are opposed to communism. Here there was no issue as to whether the plaintiffs were Communists in fact; that issue had been voluntarily taken from the case by the defendants’ concession that they were not. To allow such an extravagant self-spoken display of piety and religious devotion could have no other purpose and effect than to incite the sympathy of the jury in plaintiffs’ favor and to give them grounds for inflicting severe monetary punishment on overzealous party members 'for their careless castigation of their opponents in the closing days of a bitterly fought primary contest. Such religious proof in fact constitutes the only basis for the jury verdict, as there is no other showing of injury justifying compensatory damages. As we see it, such an extensive interrogation, in the light of all the circumstances, went far beyond any probative requirement and, as such, was so improper as to *87 constitute substantial error requiring tbe granting of a new trial to tbe appealing defendants, James J. Farley, James J. Farley Association, Inc., and Lawrence P. Cuceia.
We make no comment as to Simpson and Rodesk since tbey are no longer in tbe case, and as to tbe defendant J. & W. Newsprinters, Inc., as it did not appeal.
Tbe cross appeals taken by tbe plaintiffs from so mucb of tbe judgment as reduces tbe jury verdict should be dismissed, without costs.
Tbe judgment insofar as it applies to tbe defendant James G. Donovan should be reversed and tbe complaint dismissed, with costs in all courts.
Tbe judgment, insofar as it applies to tbe defendant James J. Farley, James J. Farley Association, Inc., and Lawrence P. Cuccia, should be reversed and a new trial granted, with costs to abide tbe event and, as so modified, tbe judgment appealed from should otherwise be affirmed, with costs.
Desmond, Fuld and Froessel, JJ., concur with Conway, Cb. J.; Dye, J., dissents in an opinion in which Van Voorhis and Burke, JJ., concur.
Judgment modified in accordance with tbe opinion herein and, as so modified, affirmed. Cross appeal of plaintiffs dismissed.