FRANK GAMBUZZA, Respondent, v. TIME, INCORPORATED, Appellant.

First Department, April 23, 1963.

352

*Harold R. Medina, Jr.*, of counsel (*Cravath, Swaine & Moore,* attorneys), for appellant.

*Irving A Logue* of counsel (*Seymour W. Miller* with him on the brief; *Miller & Seeger,* attorneys), for respondent.

RABIN, J. In this libel action Special Term denied defendant's motion to dismiss the two causes of action of the complaint for insufficiency. The defendant appeals from the order of denial and we are called upon to determine whether such denial was proper. We conclude that it was not and that the motion should have been granted.

This action arises out of a picture article published in the defendant's magazine, *Life*. The article concerns the exchange of the convicted Russian spy, Rudolf Abel for the American U-2 pilot, Francis Gary Powers. It bears the over-all title: "THE GREAT SPY SWAP . . . AN ALBUM OF INTRIGUE." The first portion of the article describes the details of the exchange. Following this first portion of the article is a two-page spread captioned "BIZARRE PICTURE RECORD OF A MASTER RUSSIAN SPY . . . AND A LUCKLESS U. S. PILOT". This two-page spread consists of 12 captioned photographs, 8 of which are concerned with Rudolf Abel and 4 with Francis Gary Powers. Each of the photographs has a legend beneath it consisting of three printed lines. One of these photographs is that of the plaintiff and beneath it a legend is printed in substantially the following manner: "HIS ADMIRER. Frank Gambuzza, a radio dealer who sold Abel some parts for a wireless receiver, praised the Russian for his electronic know-how." It is this photograph and the accompanying legend of which plaintiff complains and which is the basis for this lawsuit.

The first photograph (we shall describe only those portraying the Abel side of the story) is of Abel's room and below it is a legend with the introductory phrase, "ABEL'S COVER" printed in the same manner as the words, "HIS ADMIRER" in the legend of which complaint is made. The second photograph is a view from Abel's room described by the introductory phrase as "HIS VIEW". The next photograph is of the plaintiff. The following photograph is of two persons who were neighbors of Abel's and is introduced by the phrase, "HIS NEIGHBORS." There then follow two photographs, one of a barmaid in a nearby bar and one of the superintendent of the building in which Abel resided.

These photographs are introduced as "HIS BARMAID" and "HIS SUPERINTENDENT" respectively. There is then a photograph of a portion of Fort Tryon Park where Abel contacted his fellow spies under which is the introductory phrase, "HIS CONTACT POINT." This is followed by the last photograph concerning Abel which is designated as "HIS COMEUPPANCE" and shows Abel under guard leaving the Federal courtroom.

The photograph which is the basis for this lawsuit shows the plaintiff in his radio shop with the legend above set forth. The first cause of action is based on this photograph and the introductory words "HIS ADMIRER". The second cause relies upon the photograph and the entire legend.

The complaint being devoid of allegations of special damage it may not stand unless there is alleged a libel per se (O'Connell v. Press Pub. Co., 214 N. Y. 352, 358). To constitute a libel per se the publication complained of must tend to "expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community" (Mencher v. Chesley, 297 N. Y. 94, 100). Whether or not a publication is reasonably susceptible of a meaning which will effect such a result is for the courts to decide. (Julian v. American Business Consultants, 2 N Y 2d 1, 14.) "[A] court shirks its duty if it creates an issue, when none exists" (Crane v. New York World Tel. Corp., 308 N. Y. 470, 479–480). We conclude that as a matter of law this photograph and the legend underneath it are not reasonably susceptible of a libelous meaning. Accordingly, we conclude that both causes of action are insufficient and the complaint should be dismissed.

As indicated, the first cause of action is addressed to the use of the words, "HIS ADMIRER" prefixing the legend beneath the photograph. The complaint alleges that "said words refer to plaintiff as an admirer of the aforesaid Rudolf Abel." The pleader of course wishes to convey the thought that the article portrays the plaintiff as an admirer of Rudolf Abel, the Russian spy. Such impression can only be gathered if the words "HIS ADMIRER" are segregated and disassociated from the balance of the legend. However, these words are adjacent to and amplified by the words which give it an entirely different meaning. One cannot read the one without seeing and reading the other.

However, plaintiff contends that the allegedly defamatory words are in the nature of a headline which, if libelous in themselves, will suffice to make out a good cause of action. The general rule applicable to headlines appears to be that they must be read in the context of the entire article (Kloor v. New York

*Herald Co.,* 200 App. Div. 90; *Bresslin* v. *Sun Print. & Pub. Assn.,* 177 App. Div. 92; Seelman, Law of Libel and Slander in New York, par. 160, p. 138). Of course, this rule is not applicable in every case where by reason of the nature of the libelous headline and the accompanying explanatory article the headline itself may be appraised separately as a libelous publication. This is not such a case. The test to be applied is whether the article accompanying the headline would ordinarily be read with it (see Restatement, Torts, Vol. 3, § 563, *Comment d*). Even if we were to assume these words to be a headline, they are printed so close to the remainder of the legend as to be, for all intents and purposes, a part of the legend and inseparable. The staccato and provocative nature of the introductory phrases of the legends under each of the photographs are such as to invite, or even to compel a reading of the remainder of the legend. Particularly is this so when the balance of the legends is so short. With respect to the legend complained of it is inconceivable that a reasonable person who looks at the photograph would read the two words " HIS ADMIRER " alone and form a conclusion as to their meaning without reading the three following lines of explanation.

This case is not at all analogous to a situation involving a headline. In such case a person passing a newsstand or otherwise seeing a newspaper may be able to catch a glimpse of a headline without the opportunity or desire to read the accompanying article or may skim through the paper jumping from headline to headline. In the situation here presented — particularly because of the physical setup of the legend — the article must be considered as a whole and its meaning gleaned not from isolated portions thereof but rather from the entire article and the apparent object of the writer. (*More* v. *Bennett,* 48 N. Y. 472; *Klaw* v. *New York Press Co.,* 137 App. Div. 686; Seelman, Law of Libel and Slander in New York, par. 160, p. 138.) Examining the entire legend in " fair context " and considering it in its " total impact " (*Berkson* v. *Time, Inc.,* 8 A D 2d 352, affd. 7 N Y 2d 1007) we conclude that it is not libelous per se. For this legend to be libelous per se it must meet the test of tending to " expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community " (*Mencher* v. *Chesley,* 297 N. Y. 94, 100, *supra*). A fair reading of the material complained of precludes a conclusion that such tendency is created by the publication with which we are here concerned.

The thrust of plaintiff's argument referable to the first cause of action is that the article labels him as an admirer of a Russian

spy — which perhaps could be considered libelous. However, a reasonable reading of the entire legend does not permit of a conclusion that plaintiff is identified as an admirer of Rudolf Abel qua Rudolf Abel, the Russian spy. To the contrary, the photograph complained of — as do all the other photographs and legends — attempts to show the activities of Abel in his guise as an ordinary law-abiding citizen. It depicts how various of his neighbors were deceived as to his true identity and how they felt towards him before they knew him to be an agent of the Soviet government. Each of the photographs referred to the persons photographed in their relation to Abel before he was exposed. The only inference to be drawn from this photograph and legend is that plaintiff admired Abel for his skill and know-how in electronics. Attributing such admiration to plaintiff falls short of constituting a libel against him.

The second cause of action relies upon innuendo. It alleges — through the use of innuendo — that the defendant charged plaintiff with being '' an admirer of a person engaged in activities looking toward the overthrow of the American form of government by force and violence '' and that he '' may have knowingly assisted Rudolf Abel in his spying activities ''. In determining whether the innuendo asserted is warranted, its function in libel must be examined. Its office is to '' point out the libelous meaning of which, the plaintiff claims, the words used are susceptible '' (Seelman, Law of Libel and Slander in New York, par. 421, p. 417). '' [W]here the words are clear and plain, the court must determine whether they are libelous or nonlibelous; and whether the innuendo is necessary (*Tracy* v. *Newsday, Inc.,* 5 N Y 2d 134, 136; *O'Connell* v. *Press Pub. Co.,* 214 N. Y. 352, *supra*). '' The admitted purpose of an innuendo is to explain matter that is insufficiently expressed. Its office is to point out the libelous meaning of the words used. If the article is not susceptible of a libelous meaning, then innuendo cannot make it libelous  *  *  *  The innuendo, therefore, may not enlarge upon the meaning of words so as to convey a meaning that is not expressed ''. (*Tracy* v. *Newsday, Inc., supra,* p. 136.)

Examining the publication complained of in the light of the aforesaid guides we conclude that the innuendo may not be relied upon to make it libelous. The words used are '' clear and plain '' and need no explanation. In any event it is clear that even were the language used '' insufficiently expressed '' it is not susceptible of a meaning — as charged in the complaint — that the plaintiff was an '' admirer '' of a person engaged in activities looking toward the overthrow of the American form

of government by force and violence " and that he " may have knowingly assisted Rudolf Abel in his spying activities ". To impart such a meaning to this publication would be to add something in direct conflict with the meaning of the legend as clearly expressed and thus do violence to reason and common sense. The use of innuendo is not permitted to achieve such result.

The key requirement in the tests laid down by the Court of Appeals regarding the use of innuendo is that the language used be " susceptible " of the meaning sought to be ascribed to it. To hold that this publication is so susceptible is to distort the meaning of the word susceptible beyond the confines of any definition attributable to it. The language here complained of can only mean what the plaintiff contends it does by applying a completely unreasonable, remote and illogical meaning to the same. To achieve such a result is not the office of innuendo.

Of course it must be observed that all of our discussion relative to the nature of the publication is an inadequate substitute for a reading of the article itself. Such a reading readily and clearly dissipates any thought that this plaintiff has been libelled.

Accordingly, the order denying defendant's motion to dismiss the complaint for insufficiency should be reversed on the law and the motion granted, with costs.

McNALLY, J. (dissenting). In the first cause of action plaintiff alleges that the February 16, 1962 issue of *Life* magazine contained a picture story of a Russian spy named Abel. Included therein was plaintiff's picture. The initial caption thereunder in bold capital type was " HIS ADMIRER ".

In the second cause of action plaintiff alleges the entire caption: " HIS ADMIRER. Frank Gambuzza, a radio dealer who sold Abel some parts for wireless receiver, praised the Russian for his electronic know-how." By way of innuendo plaintiff alleges that the caption implied that plaintiff may have aided Abel, the spy.

In the light of current public opinion and sentiment on Communists and their sympathizers, whether the alleged statements are libelous involves issues of fact. (*Mencher* v. *Chesley*, 297 N. Y. 94; *Katapodis* v. *Brooklyn Spectator,* 287 N. Y. 17.)

Accordingly, I dissent and vote to affirm.

BOTEIN, P. J., and STEVENS, J., concur with RABIN, J.; McNALLY, J., dissents in opinion in which VALENTE, J., concurs.

Order, entered on October 3, 1962, denying defendant's motion to dismiss the complaint for insufficiency, reversed, on the law, with $20 costs and disbursements to the appellant, and the motion granted, with $10 costs.