Niagara Falls International Bridge Company et al.,
Respondents, *v.* The Grand Trunk Railway Company of Canada et al., Appellants.

Contract — bridges — railroads — injunction — action by international bridge companies to restrain lessee railroads from switching cars on bridge — construction of contract — injunction properly granted — when rights may be protected by decree prohibiting act outside of State — courts of either of two sovereignties which have joined in creating rights which cross border may protect rights within the jurisdiction by prohibiting unlawful acts without — court should retain control of proceeding so as to modify injunction should it appear to seriously interfere with operation of railway.

1. In an action brought by the plaintiffs, owners of a bridge across the Niagara river, to restrain the defendant railroads, lessee and sublessee of the railway floor of the bridge, from using the bridge for switching cars, an examination of the original lease and the agreements supplementing and amending it sustains if it does not compel the conclusion that the parties were contracting with reference to a bridge and not merely with reference to railway tracks upon the bridge. It was leased as a bridge, it was to be used for railway purposes as a bridge, and not as part of a railroad yard. It was intended to withstand the strain intended for the passage of trains across it and any use of the bridge for other purposes which increases the strain upon the bridge was not within the contemplation of the parties and the fair construction of the language of the agreements.

2. Although the use of the bridge for switching purposes has continued for many years, during which additional and supplemental agreements were made which do not show any claim on the part of the bridge companies that such use exceeded the rights of the railway company, where all the circumstances, together, permit the inference that there has been no complete acquiescence in that use and no practical construction that it was authorized and where there is evidence that the stopping, starting and reversing of engines in the course of switching operations and the frequent application of brakes increases the strain upon the bridge, an injunction is properly granted at least so far as it applies to operations upon the New York side of the bridge.

3. While a court of equity will ordinarily not grant an injunction compelling action by a non-resident in a foreign State or country, for

the sovereign power of each State may determine for itself what may or must be done within its own borders, yet there are at least apparent exceptions to this rule. Contractual rights may be enforced and property rights protected by decree prohibiting performance of an act outside of the State where otherwise adequate relief could not be given by the courts of the State where the action has been properly brought.

4. In the present case, though one of the defendants is a foreign corporation, it is within the jurisdiction of the court and the decree merely prohibits switching and does not directly and affirmatively command the performance of any act outside the State, and while the absolute right of the Canadian sovereignty to direct the operations of the public service corporations within its borders, and to make laws governing the use of lands and bridges within its boundaries, is recognized, where it has by statute given a corporation created by it the power to unite with a New York corporation to construct the bridge and by further statute has given the corporation power in conjunction with the New York corporation to make a lease of the entire bridge, it has thereby recognized private rights that cross the border line and the courts of either sovereignty may protect rights within the jurisdiction by prohibiting acts outside of its territory, which, as the law now stands in both jurisdictions, are unlawful.

5. The court should, however, retain control of the proceedings so that if it appears that immediate and entire cessation of switching on the bridge will seriously interfere with the operation of the railway and the public convenience, the court may modify the injunction or suspend it temporarily, so far as that can be done with safety, upon proof that the objectionable practice will cease as soon as practicable.

*Niagara Falls International Bridge Co.* v. *Grand Trunk Ry. Co.,* 212 App. Div. 705, modified.

(Argued June 8, 1925; decided July 15, 1925.)

APPEAL from a judgment, entered March 14, 1925, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at an Equity Term and directing judgment in favor of plaintiffs.

*Adelbert Moot, S. Fay Carr* and *Helen Z. M. Rodgers* for appellants. The Appellate Division erred in holding that under the agreements between the plaintiffs and the

Grand Trunk, defendants are not entitled to continue switching movements on plaintiffs' bridge. (*United States* v. *Fisk,* 79 U. S. 445; *Town of East Hampton* v. *Vail,* 151 N. Y. 463; *Litchfield* v. *Cudworth,* 32 Mass. 23, 27; *U. S.* v. *D. & H. Co.,* 213 U. S. 366.)   The Appellate Division erred in reversing the conclusion of law that plaintiffs and defendants have by their acts construed said agreements to include the right to switch on the railroad floor of the bridge. (*Miller* v. *Clarey,* 147 App. Div. 263; *Dold Packing Co.* v. *Kings County Refrigerating Co.,* 176 App. Div. 407; *Easton* v. *Pickersgill,* 55 N. Y. 310; *Woolsey* v. *Funke,* 121 N. Y. 87; *Sattler* v. *Hallock,* 160 N. Y. 291; *City of New York* v. *N. Y. City Ry. Co.,* 193 N. Y. 543; *Carthage Mills* v. *Village of Carthage,* 200 N. Y. 1; *Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *Matter of City of New York,* 217 N. Y. 1; *Bullock* v. *Cooley,* 225 N. Y. 566; *New York Trust Co.* v. *Portland Ry. Co.,* 197 App. Div. 422; *Insurance Co.* v. *Dutcher,* 95 U. S. 269.)   The plaintiffs by their long acquiescence in the use of the bridge have waived their right, if one ever existed, to enforce the alleged condition and by their various agreements with knowledge of the facts are equitably estopped from claiming a breach of the contracts.   (Williston on Cont. §§ 688, 695; Joyce on Injunctions, § 488; *Jayne* v. *Cortland Water Works Co.,* 107 App. Div. 519; *Clark* v. *West,* 193 N. Y. 349; *Rothschild* v. *Title Guaranty & Trust Co.,* 204 N. Y. 458; *Groesbeck* v. *Morgan,* 206 N. Y. 385; *Smith* v. *Kerr,* 108 N. Y. 31.)   The Appellate Division erred in reversing the conclusion of law that plaintiffs are estopped from claiming that the defendants have no right to do switching on the bridge. (*Rothschild* v. *Title G. & T. Co.,* 204 N. Y. 458.)   The Appellate Division erred in granting a mandatory injunction commanding defendants to immediately desist from switching upon the bridge and from stopping cars thereon. (*Knoth* v. *Manhattan Ry. Co.,* 187 N. Y. 243; *McCann* v.

*Chasm Power Co.*, 211 N. Y. 301; *Troy, etc., R. Co.* v. *Boston, etc., R. Co.*, 86 N. Y. 107; *Robinson* v. *Guaranty Trust Co.*, 51 App. Div. 134; *Goldman* v. *Corn*, 111 App. Div. 674; *McHenry* v. *Jewett*, 90 N. Y. 58; *Brass* v. *Rathbone*, 153 N. Y. 435.) The courts of this State have no jurisdiction to grant an injunction restraining any use of the bridge by the Grand Trunk Railway Company within the Dominion of Canada. (*Canada Southern Ry. Co.* v. *Gebhard*, 109 U. S. 527; *McClement* v. *Order of Foresters*, 222 N. Y. 470; *United States* v. *Fox*, 94 U. S. 315; *Brine* v. *Ins. Co.*, 96 U. S. 627; *Olmsted* v. *Olmsted*, 216 U. S. 386; *Fall* v. *Eastin*, 215 U. S. 1; *W. U. Tel. Co.* v. *P., etc., Tel. Co.*, 49 Ill. 90; *Pennoyer* v. *Neff*, 95 U. S. 714.)

*Charles B. Wheeler* for respondents. There was no practical construction of the contracts between the parties to the effect that the defendants had the right to use the bridge for switching purposes. (*Rothschild* v. *Title G. & T. Co.*, 204 N. Y. 458.) The contention of the appellants that by reason of the failure to bring action to restrain earlier violations plaintiffs are estopped from now asserting their rights, is not good law. (*Galway* v. *Met. El. Ry. Co.*, 128 N. Y. 132; *N. Y. Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Rothschild* v. *Title G. & T. Co.*, 204 N. Y. 458; *Thompson* v. *Simson*, 128 N. Y. 720.) Although the bridge in question is one spanning the Niagara river and lies partly within the Dominion of Canada that fact does not preclude the courts of New York from granting the injunction asked. (*Union Trust Co.* v. *Olmsted*, 102 N. Y. 729; Pom. Eq. Juris. § 1318; *Williams* v. *Ayrault*, 31 Barb. 368; *Grant* v. *Cobre Grande Copper Co.*, 193 N. Y. 306; *Williams* v. *Fitzhugh*, 37 N. Y. 444; *Phelps* v. *McDonald*, 99 U. S. 298; *Corbett* v. *Nutt*, 77 U. S. 464; *Vacuum Oil Co.* v. *Eagle Oil Co.*, 154 Fed. Rep. 875; *Louisville & N. R. Co.* v. *Western Union Tel. Co.*, 207 Fed. Rep. 1–6.)

Lehman, J.  The plaintiff Niagara Falls Suspension Bridge Company is a Canadian corporation with power under the law of its creation to " unite with any other persons, company or body politic to construct a suspension or other bridge across the Niagara river."  The plaintiff Niagara Falls International Bridge Company is a New York corporation with somewhat similar powers.  The boundary line between Canada and the United States is along the center of the Niagara river.  Neither Canada nor any sovereignty within the United States could alone authorize the construction of the bridge.  The sovereignties controlling both parts of the river could do so in concert.  Acting under authority given by the two sovereignties, the two corporations have built and now own a bridge across the river, with one floor for the use of pedestrians and vehicles and an upper floor for the use of railway trains.  They have entered into a number of agreements with the Great Western Railway Company of Canada West and its successor the Grand Trunk Railway Company of Canada, whereby they leased the railway floor of the bridge to those companies for railway purposes.  Under the terms of these agreements, exclusive control of this floor has been conferred upon the Grand Trunk Railway Company, and it has the exclusive right to extend to other companies and persons the privilege of using said bridge with locomotives, trains and cars carrying passengers and freight.  It has extended that right to the Erie Railroad Company.  Both companies are now using and for many years past have used the bridge not merely for the passage of trains across it, but also for the purpose of switching cars to different tracks on the same side of the river.  The plaintiffs claim that the use of the bridge by the railway companies for switching cars is not permitted by the terms of the agreements, and that such use places upon the bridge a strain which it was not calculated to withstand and

which may be dangerous, and they ask an injunction prohibiting both railroads from continuing such use. By the judgment of the Appellate Division, that relief has been granted and both railway companies have been " ordered and commanded to immediately and absolutely and permanently cease, desist and refrain from switching cars, trains or engines on the said bridge, and from stopping or standing cars or engines thereon, and from consenting to or approving the use of said bridge for any of said purposes."

The extent of the rights of the Grand Trunk Railway Company of Canada and its licensee, the Erie Railroad Company, in the use of the bridge depends upon the construction of the original lease made with the Great Western Railway Company of Canada West and the agreements supplementing and amending the original lease. These instruments contain neither express prohibition nor express permission in regard to the use of the bridge for switching purposes. The question remains whether the parties intended that the structure leased should be used by the railway company only as a bridge for the passage of trains across it, or intended that the tracks upon it were to be used for any purpose for which railway tracks ordinarily are used whether on a right of way, in a railway yard, or upon a bridge. Isolated expressions may be found in the various agreements which might seem to lend some support to inference in either direction; none are entirely conclusive when read in connection with the other parts of the agreements and interpreted in the light of surrounding circumstances. We shall not in this opinion analyze the documents in evidence. We conclude that the evidence is amply sufficient to sustain, if it does not indeed compel, the conclusion of the Appellate Division that the parties were contracting with reference to a bridge and not merely with reference to railway tracks upon the bridge. It was leased as a bridge, it was to be used for railway purposes

as a bridge, and not as part of a railroad yard. It was intended to withstand the strain intended for the passage of trains across it and any use of the bridge for other purposes which increases the strain upon the bridge was not within the contemplation of the parties and the fair construction of the language of the agreements. There is evidence that the use of the trains for switching due to the stopping and starting of the engines in the course of the switching operation and the frequent application of the brakes increases the strain upon the bridge, and it is somewhat significant, even though perhaps not conclusive, that the original lease provided " no locomotive or cars to stop or remain on the bridge in passing over." There is evidence that the strain is different and, perhaps, greater when the switching engine reverses and pushes off the bridge the cars which it has previously pulled upon it, and it is somewhat significant that the last agreement prohibits the use of " pusher engines " even though by that term the parties may have had in mind only engines which push the train under other conditions.

It is true that the use of the bridge for switching purposes has continued for many years, during which additional and supplemental agreements were made which do not show any claim on the part of the bridge companies that such use exceeded the rights of the railway company. Long-continued acquiescence in a particular use may show practical construction that the use was authorized or even may create an estoppel against an assertion that such use is unauthorized. In the present case there is some evidence that objection was made to such use, at least during the last years before the agreement of 1919 was made; there are some indications in the record that the Grand Trunk officials themselves have not approved of the use of the bridge for such purpose, but continue it temporarily because abandonment of the bridge as a switch would necessitate changes in the yard costing more than five hundred thousand dollars; all the

circumstances, together, permit the inference that there has been no complete acquiescence in such use; and no practical construction that it was authorized. Failure to insist upon express prohibition of such use in the last agreement of 1919 may have .been due to the expressed intention on the part of the Grand Trunk Railway to make changes within a reasonable ·time in the yard so that all switching could be done there instead of upon the bridge. These considerations require affirmance of the injunction, at least so far as it applies to operations upon the New York side of the bridge.

The bridge is one entire structure; the contract under which the Grand Trunk Railway Company of Canada claims rights upon the bridge is an entire contract made with two corporations having entire ownership of the structure to which the contract refers. While a court of equity will ordinarily not grant an injunction compelling action by a non-resident in a foreign State or country, for the sovereign power of each State may determine for itself what may or must be done within its own borders, yet there are at least apparent exceptions to this rule. Contractual rights may be enforced and property rights protected by decree prohibiting performance of an act outside of the States where otherwise adequate relief could not be given by the courts of the State where the action has been properly brought. Instances are so numerous where such decrees have been made that analysis of the cases is impractical. Distinction is sometimes drawn between a decree compelling the performance of an act and a decree prohibiting the performance of an act. (Beale Jurisdiction of Courts over Foreigners, 26 Harvard Law Rev. 292.) It has been said that the decree of a court of equity which forbids a defendant found within the territorial jurisdiction of the court to do or continue · an act harmful to a resident of or property within the State can be obeyed by the defendant without leaving the jurisdiction and is, therefore, not subject to criticism

1925.] Opinion, per Lehman, J. [241 N. Y. 85]

or attack on the ground that the courts are interfering with a foreign sovereignty or issuing a decree which cannot be enforced in their jurisdiction. We need not determine whether the difference between a decree ordering the performance of an act outside the State and a decree forbidding the performance of such acts affects the power of the court or merely its discretion in exercising that power. While the cases are perhaps rare in which the courts could properly exercise the power, assuming that they possess it, to compel a defendant to *perform* an act affecting land outside the State, yet in the case of *Rickey Land & Cattle Co.* v. *Miller & Lux* (218 U. S. 258) the court affirmed a decree enjoining a wrongful use of water outside the State which included an affirmative command to install certain appliances on the land. In the present case the Grand Trunk Railway Company of Canada, though a ` foreign corporation, is within the jurisdiction of the court; the decree merely prohibits switching, and does not directly and affirmatively command the performance of any act outside of the State. Doubt, if any, of the power of the court to issue the decree against the foreign corporation is based on the ground that the decree limits the use and, to that extent, affects real property outside of the State and interferes with the operations of a public service corporation, rather than on the ground that a court of equity has not, in general, power to issue an injunction forbidding the doing of an act in a foreign country.

We recognize the absolute right of the Canadian sovereignty to direct the operations of the public service corporations within its borders; and to make laws goveren ing the use of lands and bridges within its boundaries. We may not by statute or decree assume powers which conflict with the sovereign powers of an independent government. The courts below have found " that that portion of the bridge and all approaches, land and improvements situated on the westerly side of said International

boundary line are the property of the plaintiff, the Niagara Falls Suspension Bridge Company," a Canadian corporation. The Canadian sovereignty may by its laws determine the right to the use of that portion of the bridge, but the Canadian government has acted in the premises. It has by statute given the corporation created by it the power to unite with a New York corporation to construct the bridge and by further statute it has given the corporation power in conjunction with the New York corporation to make the lease now under consideration. The subject-matter of the lease was an entire bridge; the use of one part of the bridge necessarily affects the use of the whole bridge. Since Canada has thereby recognized private rights " that cross the border line, the analogies are in favor of allowing them to be enforced within the jurisdiction of either party to the joint arrangement." (*Rickey Land & Cattle Co.* v. *Miller & Lux, supra,* p. 262.) The Appellate Division has found upon sufficient evidence that switching operations are not permitted by the lease; are detrimental to the bridge and are a menace to the safety and stability of the bridge. Both sovereignties having joined in the creation of rights which cross the international boundaries, the courts of either sovereignty may protect rights within the jurisdiction by prohibiting unlawful acts outside of its territorial jurisdiction.

We are not called upon to pass now upon the effect of statutes or orders made hereafter by agencies of the Canadian government which might render lawful the use of the part of the bridge in Canada which has now been declared unlawful. Perhaps changes in the law of Canada might hereafter require modification of the decree or be a bar to proceedings for its enforcement. Conceivably a similar result might arise from some order of the Interstate Commerce Commission of the United States. We do not decide that the use now prohibited may not hereafter be rendered lawful. We merely decide

that as the law now stands in both jurisdictions the prohibited use is unlawful.

It has been urged that the decree is unreasonably drastic in ordering immediate and complete abandonment of a practice which has been long continued and which, it is said, cannot be abandoned at present without crippling the operations of the railroad. The court below had power to enjoin the Grand Trunk Railway Company; we may not say that its discretion was wrongly exercised, though the courts will not without compelling reason interfere by injunction with the operation of a foreign railway. The court should, however, retain control of the proceedings so that if it appears that immediate and entire cessation of switching on the bridge will seriously interfere with the operation of the railway and the public convenience, the court may modify the injunction or suspend it temporarily, so far as that can be done with safety, upon proof that the objectionable practice will cease as soon as practicable. For that reason the judgment should be modified by provision that any party may apply at the foot of the decree for modification of the injunction or other or further relief.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; POUND, J., absent.

Judgments modified accordingly, and as modified affirmed, with costs.