Wenzel, J.
The proceeding under consideration was brought by a beneficiary of an express trust to direct the trustee to pay net income to her.
The deed of trust was made by the trustee himself, the appellant Richard J. Forhan, on December 15, 1922, for the benefit of the petitioner, his wife, with contingent remainders to others, and the settlor designated himself as the sole trustee. By the terms of the indenture the period of the trust was measured by the lives of said trustee and a certain named daughter of the parties, during which time the petitioner was to be paid the income of the principal of the trust, and upon the termination of the trust she was to be paid the principal itself, if she survived. Thereafter, and on April 5, 1932, the settlor executed another document, by which he appointed the petitioner cotrustee. In the interest of convenience, we shall refer to the original sole trustee as the trustee.
The petition alleges that income has not been paid to the petitioner since April 1, 1947, and that the income since that time is in excess of $15,000. The answer admits that the trustee has retained income for the year 1948, and the year 1949, up to the time of answer, aggregating $4,990.20.
Part of the principal had been invested in two mortgages on a tract of real property, to secure loans aggregating $50,000. The mortgages were foreclosed and the trustee bought the realty upon the foreclosure sale, taking title on September 29, 1944. Part of the property has been resold and the trust estate thus realized a total of $36,000.
It is alleged in the trustee’s answer that the trustee paid the taxes on the property, and other expenses, and, in addition, expenses and charges on other properties and assets held by the trust, commencing in the year 1940, aggregating upwards of $45,000; and that, nevertheless, the total income derived from the trust corpus was paid to the petitioner during the years 1940 to 1947, without deduction on account of the said expenditures. It is the position of the trustee that these expenditures should have been charged against such income and that, therefore, the petitioner owes the trust estate a total of more than $40,000, after taking into account the total income for the year 1948 and part of 1949, in the amounts above mentioned.
*296 The questions before us are whether, by the terms of the trust indenture and applicable law, these expenditures, which were mainly for salvaging the mortgage investment, are properly chargeable against income; and, if so chargeable, whether the petitioner may be denied the payment of income until the principal account be reimbursed in full for the stated expenditures.
The terms of a trust deed may themselves fix the source of the funds to be used for expenses in administering the trust, whether for salvaging an investment or otherwise. Such direction controls, unless violative of law. However, in the absence of such mandate, so far as salvage expenses are concerned, separate accounts should be set up for each investment or asset; and first resort for funds for such purpose, as to each such investment, shall be the income of that particular investment, and, if that be insufficient or there be no income from that investment, funds may be taken from the principal. (Matter of Chapal, 269 N. Y. 464; Matter of Otis, 276 N. Y. 101.) So much of the rule of the Chapal and Otis cases, popularly referred to as the Chapal-Otis rule, as has been just above restated has not been modified by subdivision 2 of section 17-e of the Personal Property Law, enacted in 1940 (L. 1940, ch. 452).
It will first be necessary, therefore, to determine whether the terms of the trust carry any direction as to the source or sources for the funds for salvage expenses. The introductory recitals of the trust indenture state, amongst other things, that the trust is established “ for the sole use and benefit of my wife, Julia A. Fobhan, * * * hereinafter referred to as the Beneficiary, for the following purposes and upon the following terms and conditions: ” These purposes, terms and conditions, so far as germane, are then stated to be:
“ 1. To receive and collect the income, profits, interest and dividends therefrom or from other securities, properties or monies which may be substituted therefor as hereinafter provided, and after first deducting all taxes, commissions and other charges against the same or against the principal of said trust, to pay the same over during the joint lives of the Trustee and my daughter, Marie K. Forhan, to the said Beneficiary, and in the event of the death of the said Beneficiary prior to the expiration of said joint lives, to her lawful issue per stirpes, and failing such issue, to such person or persons as she may designate by her last will and testament.
“ 2. And upon the death of the survivor of the said Trustee and the said Marie K. Forhan, to pay the principal of said trust *297 to the said Beneficiary, if living, and if dead, to her lawful issue per stirpes, and failing such issue, to such person or persons as she may designate by her last will and testament, and failing such designation, to the next of kin of the Trustee in accordance with the law of the State of New York at the time of her death. * * *
“ 5. With respect to securities held by the Trustee or any successor hereunder at any time, in addition to any other powers which they may possess and not by way of limitation of such powers, the said Trustee, or any successor in said trust may — * * *
“(c)* * * enforce and direct the enforcement of any mortgage or other lien and out of the income or principal pay the expenses thereof * * *.
“ 6. The Trustee is directed not to amortize premiums on securities which he may receive hereunder or buy above par, but to pay the entire income to the persons entitled to receive income hereunder. * * *.”
The order under review decrees “ that charges against the income of the trust are deductible from and shall be paid out of the income of the trust and that charges against the principal of the trust are deductible from and shall be paid out of the principal of the trust;” that the treatment of the salvage expenses is governed by subdivision 2 of section 17-c of the Personal Property Law; and that the trustee forthwith pay all accumulated and future income to the petitioner, without deduction for salvage or capital expenditures.
It is our opinion that subdivision 1 of the indenture requires the trustee to charge all expenses against income, even though such expenses would otherwise be regarded payable out of principal; but subject to the exception under paragraph (c) of subdivision 5, that, if any expenses are incurred for the enforcement of a mortgage or lien owned by the trust estate, the trustee may meet such expenses out of income or principal, in his discretion. The above-quoted provisions clearly show that the petitioner was the prime beneficiary and, although the direction of subdivision 1 might under certain circumstances result in the exhaustion of all income on account of capital expenses, our construction of paragraph (c) of subdivision 5 permits the trustee to carry out the prime object of the trust, at least in operations to salvage investments in mortgages and other such securities, that is, to provide income for the petitioner.
*298 In addition, the trust provisions show no intent contrary to so much of the Chapal-Otis rule as requires each investment which is the subject of a salvage operation to be treated separately, and therefore that part of the rule is applicable here.
Accordingly, since the mortgages here in question earned no income in the years during which the expenses were incurred, the trustee could not charge such expenses against income earned out of'any other part of the trust corpus. In any event, the trustee, having charged the expenses against principal up to some time in 1947, under the power given him in paragraph (c) of subdivision 5 of the indenture, should not be permitted to recall that exercise of discretion.
Payment of income earned from other investments should, therefore, have been continued, and must continue, to the petitioner, undiminished by virtue of these salvage expenses.
Although we are in accord with so much of the holding of the Special Term as directs the payment of accumulated and future income from other investments, we do not agree that such result may be influenced by (1) any practical construction of the terms of the indenture by the trustee and the petitioner, in the light of the fact that it has not been shown that the remaindermen, many of whom are infants, acquiesced in any such construction (see Niagara Falls Int. Bridge Co. v. Grand Trunk Ry. Co., 212 App. Div. 705, 710, mod. 241 N. Y. 85, 91-92); or (2) a view that a direction to charge the expenses in question against income would constitute a mandate for an unlawful accumulation of income. If it be necessary to apply income for the protection of the earning capacity or other protection of the trust corpus, no unlawful accumulation results. (Matter of Nesmith, 140 N. Y. 609.) The Chapal-Otis rule and its statutory modification, themselves negate the view that there is such accumulation.
The order should be modified on the law in accordance with the foregoing views, without costs, and, as modified, should be affirmed.