**Muhammad ALI, Plaintiff,**

v.

**PLAYGIRL, INC., Tony Yamada and Independent News Company, Defendants.**

**No. 78 Civ. 445.**

United States District Court, S. D. New York.

· March 3, 1978.

724

Freeman, Meade, Wasserman & Schneider, New York City, for plaintiff; George Stiefel, New York City, of counsel.

Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for defendant Play-

girl, Inc.; Geoffrey M. Kalmus, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendant Independent News Co.; Michael D. Hess, New York City, of counsel.

## OPINION

### GAGLIARDI, District Judge.

Plaintiff Muhammad Ali, a citizen of Illinois and until recently the heavyweight boxing champion of the world,[1] has brought this diversity action for injunctive relief and damages against defendants Playgirl, Inc., a California corporation, Independent News Company ("Independent"), a New York corporation, and Tony Yamada, a California citizen, for their alleged unauthorized printing, publication and distribution of an objectionable portrait of Ali in the February, 1978 issue of Playgirl Magazine ("Playgirl"), a monthly magazine published by Playgirl, Inc., and distributed in New York State by Independent. The portrait complained of depicts a nude black man seated in the corner of a boxing ring and is claimed to be unmistakably recognizable as plaintiff Ali. Alleging that the publication of this picture constitutes, *inter alia*, a violation of his rights under Section 51 of the New York Civil Rights Law (McKinney 1976) and of his related common law "right of publicity", Ali now moves for a preliminary injunction pursuant to Rule 65, Fed.R. Civ.P., directing defendants Playgirl, Inc. and Independent[2] to cease distribution and dissemination of the February, 1978 issue of Playgirl Magazine, to withdraw that issue from circulation and recover possession of all copies presently offered for sale, and to surrender to plaintiff any printing plates or devices used to reproduce the portrait complained of. For the reasons which follow and to the extent indicated below, plain-

tiff's motion for a preliminary injunction is granted.[3]

### THE FACTS

On January 31, 1978, plaintiff Ali commenced this action by order to show cause seeking a preliminary injunction and the issuance of a temporary restraining order pending the hearing on the preliminary injunction. Rule 65(b), Fed.R.Civ.P. The temporary restraining order was issued on January 31 and the matter was set for a hearing on February 2, 1978.

At the preliminary injunction hearing on February 2, counsel stated that the February issue of Playgirl containing the allegedly unlawful portrait of Ali was then scheduled to go "off sale", that is, to be removed from newsstand circulation on February 4. Defendant Independent, through counsel, represented to the court that it was scheduled to conduct the removal of the remaining issues on that date and that thereafter Independent would not be involved in any further distribution of the magazine (Tr. 8, 11).[4] Satisfied with counsel's stipulation that Independent would consent to impound the returned copies of Playgirl until further court order, plaintiff agreed not to pursue its request for issuance of injunctive relief as against Independent (Tr. 12).

As to defendant Playgirl, Inc., however, the circumstances were substantially different. It contended, through counsel, that there would be no further domestic distribution of the issue containing the allegedly offensive picture (Tr. 7), but advised that it did intend to distribute the magazine in England (Tr. 7–8). Plaintiff therefore renewed his application for a preliminary injunction as to Playgirl, Inc., restraining any further publication or circulation of the disputed copies. In this regard all parties agree that the court, on the basis of the

---

1. On February 15, 1978 Ali was defeated by Leon Spinks in a fifteen round split decision.

2. No injunctive relief has been sought as against defendant Tony Yamada, the individual alleged to have prepared the portrait which is the subject of this action.

3. The court does not have before it and expresses no opinion concerning the cause of action alleging libel or the issue of damages, if any.

4. All page references designated "Tr." refer to the transcript of the February 2, 1978 hearing on the application for a preliminary injunction.

portrait and accompanying descriptive legend, is fully competent to decide the question of the issuance of a preliminary injunction without holding further evidentiary hearings.[5]

## DISCUSSION

This court concludes that plaintiff has satisfied the standard established in this Circuit for determining whether a preliminary injunction should issue. *Sonesta International Hotels v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973).[6] The familiar alternative test formula is that

"a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Id.* at 250 (emphasis in original). *Accord, Jacobson & Co., Inc. v. Armstrong Cork Co.,* 548 F.2d 438 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356 (2d Cir. 1976). As set forth below, this court is satisfied that under either branch of the *Sonesta* test Ali is entitled to the preliminary relief he seeks.

### *Liability on the Merits*

In determining the issues of probable success on the merits or sufficiently serious questions going to the merits of this action, it is agreed that this court must look to the substantive law of New York. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To be considered are plaintiff's claims that his statutory

"right of privacy" under § 51 of the New York Civil Rights Law and his common law "right of publicity" have been violated. (*See* footnote 3).

Section 51 of the New York Civil Rights Law provides in pertinent part:

Any person whose name, portrait or picture is used within this state for . . the purposes of trade without the written consent [of that person] may maintain an equitable action . . . against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injury sustained by reason of such use . . .

■ Defendants do not, and indeed cannot, seriously dispute the assertion that the offensive drawing is in fact Ali's "portrait or picture." [7] This phrase, as used in § 51, is not restricted to photographs, *Binns v. Vitagraph Co.,* 210 N.Y. 51, 57, 103 N.E. 1108 (1913), but generally comprises those representations which are recognizable as likenesses of the complaining individual. *Negri v. Schering Corp.,* 333 F.Supp. 101, 104 (S.D.N.Y.1971). Even a cursory inspection of the picture which is the subject of this action strongly suggests that the facial characteristics of the black male portrayed are those of Muhammad Ali. The cheekbones, broad nose and wideset brown eyes, together with the distinctive smile and close cropped black hair are recognizable as the features of the plaintiff, one of the most widely known athletes of our time. In addition, the figure depicted is seated on a stool in the corner of a boxing ring with both hands taped and outstretched resting on the ropes on either side. Although the

---

**5.** The temporary restraint has been extended to date upon consent of the parties. Rule 65(b), Fed.R.Civ.P.

**6.** Although *Sonesta International Hotels Corp. v. Wellington Associates, supra* was an action based on the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.,* the *Sonesta* preliminary injunction standard has been applied in diversity actions. *See, e. g., American Brands, Inc. v. Playgirl, Inc.,* 498 F.2d 947, 949 (2d Cir. 1974); *Factors, Etc., Inc. v. Creative Card Co.,* No. 77–4400, 444 F.Supp. 279 (S.D.N.Y., filed

Oct. 12, 1977), at 2, 14. There is no contention that it should not be controlling in this case.

**7.** At the hearing on February 2, counsel for Playgirl, Inc. all but conceded this point and stated that "the question is solely one of whether the defendant Playgirl and the distributor Independent were entitled to portray an individual who is in the limelight, who is very much a public figure in a magazine of general distribution." Tr. 4.

picture is captioned "Mystery Man," the identification of the individual as Ali is further implied by an accompanying verse which refers to the figure as "the Greatest". This court may take judicial notice that plaintiff Ali has regularly claimed that appellation for himself and that his efforts to identify himself in the public mind as "the Greatest" have been so successful that he is regularly identified as such in the news media.[8]

It is also clear that the picture has been used for the "purpose of trade" within the meaning of § 51. In this regard it is the established law of New York that the unauthorized use of an individual's picture is not for a "trade purpose", and thus not violative of § 51, if it is "in connection with an item of news or one that is newsworthy." *Gautier v. Pro-Football, Inc.,* 304 N.Y. 354, 359, 107 N.E.2d 485, 488 (1952). *Accord, Sidis v. F-R Pub. Corporation,* 113 F.2d 806 (2d Cir.), *cert. denied,* 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940); *Murray v. New York Magazine Co.,* 27 N.Y.2d 406, 318 N.Y.S.2d 474, 267 N.E.2d 256 (1971); *Pagan v. New York Herald Tribune,* 32 A.D.2d 341, 301 N.Y.S.2d 120 (1st Dept. 1969), *aff'd,* 26 N.Y.2d 941, 310 N.Y.S.2d 327, 258 N.E.2d 727 (1970); *Lahiri v. Daily Mirror,* 162 Misc. 776, 295 N.Y.S. 382 (Sup.Ct.N.Y.Co.1937). In the instant case there is no such informational or newsworthy dimension to defendants' unauthorized use of Ali's likeness. Instead, the picture is a dramatization, an illustration falling somewhere between representational art and cartoon, and is accompanied by a plainly fictional and allegedly libellous bit of doggerel. Defendants cannot be said to have presented "the unembroidered dissemination of facts" or "the unvarnished, unfictionalized truth," *Sidis v. F-R Pub. Corporation, supra,* 113 F.2d at 810. *See Flores v. Mosler Safe Co.,* 7 N.Y.2d 276, 196 N.Y.S.2d 975, 164 N.E.2d 853 (1959); *Groucho Marx Productions, Inc. v. Playboy Enterprises, Inc.,* No. 77-1782, (S.D.N.Y., filed Dec. 30, 1977), at 3-4; *Lahiri v. Daily Mirror, supra.* The nude

portrait was clearly included in the magazine solely "for purposes of trade—*e. g.,* merely to attract attention." *Grant v. Esquire, Inc.,* 367 F.Supp. 876, 881 (S.D.N.Y. 1973).

Finally, defendants concede that Ali did not consent to the inclusion of his likeness in the February, 1978 Playgirl Magazine (Tr. 2). Defendants contend, however, that even if their use of Ali's likeness is determined to be unauthorized and for trade purposes within the meaning of § 51, the statutory right of privacy does not extend to protect "someone such as an athlete . . . who chooses to bring himself to public notice, who chooses, indeed, as clearly as the plaintiff here does to rather stridently seek out publicity" (Tr. 5). Defendants are plainly in error in disputing liability on the basis of Ali's status as a public personality. Such a contention

> "confuses the fact that projection into the public arena may make for newsworthiness of one's activities, and all the hazards of publicity thus entailed, with the quite different and independent right to have one's personality, even if newsworthy, free from commercial exploitation at the hands of another . . . That [plaintiff] may have voluntarily on occasion surrendered [his] privacy, for a price or gratuitously, does not forever forfeit for anyone's commercial profit so much of [his] privacy as [he] has not relinquished." [citations omitted]

*Booth v. Curtis Publishing Co.,* 15 A.D.2d 343, 351-52, 223 N.Y.S.2d 737, 745 (1st Dept.), *aff'd,* 11 N.Y.2d 907, 228 N.Y.S.2d 468, 183 N.E.2d 812 (1962). *Accord, Gautier v. Pro-Football, Inc., supra* ("the privilege [of using a public figure's picture in connection with an item of news] does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information." 304 N.Y. at 359, 107 N.E.2d at 488); *Reilly v. Rapperswill Corp.,* 50 A.D.2d 342, 377 N.Y.S.2d 488 (1st Dept. 1975); *Groucho Marx Productions, Inc. v. Playboy Enter-*

---

8. *See, e. g.,* the cover of the February 27, 1978 issue of Time Magazine, which features a photograph of Ali, captioned " 'The Greatest' is Gone."

prises, Inc., supra, at 8. Accordingly, this court is satisfied that plaintiff Ali has established probable success on the merits of his claimed violation of privacy under § 51 of the New York Civil Rights Law.[9]

The foregoing discussion also establishes the likelihood that plaintiff will prevail on his claim that his right of publicity has been violated by the publication of the offensive portrait. This Circuit has long held that New York recognizes the common law property right of publicity in addition to, and distinct from, the statutory right under § 51. Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866, 868 (2d Cir.), cert. denied, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953); Groucho Marx Productions, Inc. v. Playboy Enterprises, Inc., supra, at 9; Factors Etc., Inc. v. Creative Card Co., No. 77–4400, 444 F.Supp. 279 (S.D.N.Y.1975), at 7–12; Price v. Hal Roach Studios, Inc., 400 F.Supp. 836, 843–44 (S.D.N.Y.1975); Grant v. Esquire, Inc., supra, 367 F.Supp. at 879–80; Booth v. Colgate-Palmolive Co., 362 F.Supp. 343, 347 (S.D.N.Y.1973); Chaplin v. National Broadcasting Co., 15 F.R.D. 134, 139–40 (S.D.N.Y. 1953). See also Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); Cepeda v. Swift & Co., 415 F.2d 1205 (8th Cir. 1969); Ettore v. Philco Television Broadcasting, 299 F.2d 481 (3rd Cir. 1956); Uhlaender v. Henricksen, 316 F.Supp. 1277 (D.Minn. 1970).

It must be noted, however, that the courts of New York do not regularly distinguish between the proprietary right of publicity, discussed infra, and the § 51 right of privacy. The latter has been characterized as establishing and limiting the right of a person "to be left alone" and protecting "the sentiments, thoughts and feelings of an individual . . . from [unwanted] commercial exploitation," Flores v. Mosler Safe Co., supra, 7 N.Y.2d at 280, 196 N.Y.

S.2d at 977–78, 164 N.E.2d at 855, but numerous cases blend the concepts together and expressly recognize a right of recovery under § 51 for violations of an individual's property interest in his likeness or reputation. See, e. g., Redmond v. Columbia Pictures Corp., 277 N.Y. 707, 14 N.E.2d 636 (1938); Rosemont Enterprises, Inc. v. Urban Systems, Inc., 72 Misc.2d 788, 790, 340 N.Y.S.2d 144, 146 (Sup.Ct.N.Y.Co.), aff'd as mod'd, 42 A.D.2d 544, 345 N.Y.S.2d 17 (1973); Rosenberg v. Lee's Carpet & Furniture Warehouse Outlet, Inc., 80 Misc.2d 479, 481, 363 N.Y.S.2d 231, 233 (Sup.Ct.N.Y.Co. 1974); Gautier v. Pro-Football, Inc., 278 App.Div. 431, 438, 106 N.Y.S.2d 553, 560 (1st Dept. 1951), aff'd, 304 N.Y. 354 (1952). Accord, Manger v. Kree Institute of Electrolysis, 233 F.2d 5, 9 n.5 (2d Cir. 1956) (dictum); Grant v. Esquire, Inc., supra, 367 F.Supp. at 879–80.

The distinctive aspect of the common law right of publicity is that it recognizes the commercial value of the picture or representation of a prominent person or performer, and protects his proprietary interest in the profitability of his public reputation or "persona." See Zacchini v. Scripps-Howard Broadcasting Co., supra, 433 U.S. at 573, 97 S.Ct. 2849. As held by this Circuit, New York State recognizes that, independent of his § 51 rights, "a man has a right in the publicity value of his photograph, i. e., the right to grant the exclusive privilege of publishing his picture." Haelan Laboratories v. Topps Chewing Gum, supra, 202 F.2d at 868. This common law publicity right is analogous to a commercial entity's right to profit from the "goodwill" it has built up in its name, Grant v. Esquire, Inc., supra, 367 F.Supp. at 879; Chaplin v. NBC, supra, 15 F.R.D. at 140; see Ettore v. Philco Television Broadcasting, supra, 299 F.2d at 490, and the interest which underlies protecting the right of publicity " 'is the straightforward

---

9. It is not contended that a finding of liability would be unconstitutional under the circumstances of this case. As described above, the offensive illustration and rhyme are essentially fictional, do not purport to portray newsworthy information and therefore do not embody those

factual "matters of public interest" for which the Supreme Court expressed concern in Time, Inc. v. Hill, 385 U.S. 374, 387–88, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). See Grant v. Esquire, Inc., 367 F.Supp. 876, 882–84 (S.D.N.Y.1973).

one of preventing unjust enrichment by the theft of good will.'" Kalven, *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 Law and Contemporary Problems, 326, 331 (1966), quoted in *Zacchini, supra,* 433 U.S. at 576, 97 S.Ct. 2849.

Accordingly, this right of publicity is usually asserted only if the plaintiff has "achieved in some degree a celebrated status." *Price v. Hal Roach Studios, Inc., supra,* 400 F.Supp. at 847, quoting Gordon, *Right of Property in Name, Likeness, Personality and History,* 55 Nw. U.L.Rev. 553, 607 (1960). In the instant case, it is undisputed that plaintiff Ali has achieved such a "celebrated status" and it is clear to this court that he has established a valuable interest in his name and his likeness. As in *Grant v. Esquire, Inc., supra,* this court "can take judicial notice that there is a fairly active market for exploitation of the faces, names and reputations of celebrities." 367 F.Supp. at 881. There can be little question that defendants' unauthorized publication of the portrait of Ali amounted to a wrongful appropriation of the market value of plaintiff's likeness.

### Irreparable Injury

It is established that plaintiff must make a showing of irreparable injury under either branch of the *Sonesta* test, *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co., supra,* 535 F.2d at 1359, and under the circumstances outlined *supra,* this court is persuaded that plaintiff has met this burden.

As has been noted, in the course of his public career plaintiff has established a commercially valuable proprietary interest in his likeness and reputation, analogous to the good will accumulated in the name of a successful business entity. To the extent that defendants are unlawfully appropriating this valuable commodity for themselves, proof of damages or unjust enrichment may be extremely difficult. *Cf. Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190 (2d Cir. 1971) (difficulty of proof of loss of sales in infringement action constitutes irreparable injury); *see Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621 (2d Cir. 1969). In virtually identical circumstances it has been observed that "a celebrity's property interest in his name and likeness is unique, and therefore there is no serious question as to the propriety of injunctive relief." *Uhlaender v. Henricksen, supra,* 316 F.Supp. at 1283. Furthermore, defendants appear not only to be usurping plaintiff's valuable right of publicity for themselves but may well be inflicting damage upon this marketable reputation. As described previously, the "likeness" of Ali which has been published is a full frontal nude drawing, not merely a sketch or photograph of him as he appears in public. Damages from such evident abuse of plaintiff's property right in his public reputation are plainly difficult to measure by monetary standards. *Myers v. U.S. Camera Publishing Corp.,* 9 Misc.2d 765, 167 N.Y.S.2d 771, 774 (City Ct.N.Y.1957). As this Circuit has noted in the preliminary injunction context, "difficulty [in computing damages] is especially common when damage to reputation, credibility or good will is present." *Dino DeLaurentis Cinematografica v. D-150, Inc.,* 366 F.2d 373, 376 (2d Cir. 1966) (citing cases). Such difficulty in determining monetary damages leaves plaintiff without an adequate remedy at law and satisfactorily establishes irreparable injury for purposes for preliminary equitable relief. *Triebwasser & Katz v. American Tel. & Tel. Co., supra,* 535 F.2d at 1359; *Danielson v. Local 275, Laborers International Union,* 479 F.2d 1033, 1037 (2d Cir. 1973); *Omega Importing Corp. v. Petri-Kine Camera Co., supra,* 451 F.2d at 1195.

This court also notes that, although it appears that routinely scheduled newsstand circulation of the contested issue of Playgirl Magazine has ceased, it is established that voluntary cessation of illegal conduct does not deprive the court of the power to grant injunctive relief. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Under all the circumstances, plaintiff has satisfied

the court that preliminary relief is needed. The market for publications in New York is not limited to newsstand sales, plaintiff's counsel indicated that there may be such demand for copies of the magazine that premium prices are offered (Tr. 11–12), and the disputed issues are within the jurisdiction of the court. Consequently, the effectiveness of the discontinuance of violations is not guaranteed, *see W. T. Grant, supra,* 345 U.S. at 633, 73 S.Ct. 894, and this court concludes that preliminary relief is in order.

### Remaining Issues

Defendant Playgirl, Inc. contends that under New York law any injunction which issues cannot extend to prohibit publication or distribution of the portrait complained of beyond the boundaries of New York State, citing *Rosemont Enterprises, Inc. v. Urban Systems, Inc.,* 42 A.D.2d 544, 345 N.Y.S.2d 17 (1st Dept. 1973). Consequently, Playgirl, Inc. takes the position that, although it is subject to the *in personam* jurisdiction of this court and has announced its intention to distribute the issue of Playgirl Magazine containing the offensive picture throughout England, the court is without authority to restrain that distribution. This court cannot agree.

Although the issue is not entirely free from question, this court agrees that, under the rule of *Erie Railroad Co. v. Tompkins,* it is to be guided by applicable state law in determining the geographical scope of any injunction it issues in aid of state law rights. *See Franke v. Wiltschek,* 209 F.2d 493, 496–97 (2d Cir. 1953) (applying *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)); *Copylease Corp. of America v. Memorex Corp.,* 408 F.Supp. 758, 758–59 (S.D.N.Y.1976); *Port of New York Authority v. Eastern Air Lines, Inc.,* 259 F.Supp. 745, 753 (E.D.N.Y.1966). *Accord,* 2 Moore, Federal Practice, ¶ 2.09 at 452–56 (2d ed. 1975) and 7 *id.* ¶ 65.18[1] at 1683–84; *but cf. Stern v. South Chester Tube Co.,* 390 U.S. 606, 609–610, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968); *Columbia Nastri & Carta Carbone v. Columbia Ribbon & Carbon Mfg. Co.,*

*Inc.,* 367 F.2d 308, 313 n.5 (2d Cir. 1966); *Clarke Equipment Co. v. Armstrong Equipment,* 431 F.2d 54, 57 (5th Cir. 1970). The New York case relied on by defendants for the proposition that any injunction issued by this court must not extend beyond New York, *Rosemont supra,* 42 A.D.2d 544, 345 N.Y.S.2d 17, restricts the extent of § 51 injunctive relief in certain circumstances due to a concern for possible conflicts between the law of New York and the applicable law of other jurisdictions. In that regard this court is clearly bound by the law of New York. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

However, defendant Playgirl, Inc., misconstrues the rationale of *Rosemont* and its applicability to the facts of the instant action. That case arose from a suit brought under § 51 of the Civil Rights Law by Howard Hughes. The lower court held that the defendants' unauthorized marketing and distribution of "The Howard Hughes Game," a board game based on plaintiff Hughes' career, constituted an appropriation of plaintiff's property rights in his name and career in violation of § 51. *Rosemont Enterprises, Inc. v. Urban Systems, Inc.,* 72 Misc.2d 788, 790–91, 340 N.Y.S.2d 144, 146–47 (Sup.Ct. N.Y.Co. 1973). As to equitable relief, the lower court held that with the exception of his co-plaintiff, with whom he had an assignment contract, "[p]laintiff is free to protect himself from the exploitation of his name and likeness *against all the world,*" 72 Misc.2d at 791, 340 N.Y.S.2d at 147 (emphasis added). On appeal the Appellate Division, in a three-sentence *per curiam* decision, affirmed as to liability but modified the unlimited scope of the injunction. The court's holding was that

> "the injunction should be restricted to activities, such as manufacturing, distributing, selling, etc., in the State of New York. In other jurisdictions (*see* Hofstadter and Horowitz, Right of Privacy [1964]), the law with respect to the right of privacy could have other efficacy with respect to a public figure (*cf. Sidis v. F–R*

*Pub. Corp.,* 113 F.2d 806 (2d Cir. 1940), *cert. denied,* 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 [1940]), both in common law interpretation and in statutes. *Cf. Rosenbloom v. Metromedia,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 [1971]." 42 A.D.2d at 544, 345 N.Y.S.2d at 18.

■ Careful examination of this holding in light of the lower court injunction compels the conclusion that the Appellate Division did not intend to establish a flat prohibition against *any* § 51 injunction extending beyond the limit of New York State.[10] Rather, reviewing an injunction which declared plaintiff's rights under § 51 to be equitably protected as "against all the world," the Appellate Division recognized that, as a practical matter, such global restraint would plainly involve intrusions into unknown foreign jurisdictions of such numbers and varieties of substantive law that no conflict-of-law analysis concerning the law of privacy could be undertaken. Consequently, the reviewing court exercised its discretion under the facts before it to note simply that "[i]n other jurisdictions, the law with respect to the right of privacy *could* have other efficacy with respect to a public figure" 42 A.D.2d at 544, 345 N.Y.S.2d at 18 (emphasis added; citations omitted), and to restrict application of the injunction to New York.

■ In the present case, by contrast, this court is not faced with factual circumstances involving the necessity of equitable relief running throughout numerous indeterminable jurisdictions. Defendant Playgirl, Inc., has represented its intention to distribute overseas only in England. For purposes of the motion for preliminary relief and compliance with the second branch of the *Sonesta* test, this court concludes that the law of England with respect to plaintiff's right of privacy, at least insofar as it includes his proprietary right of publicity and reputation, is such that under it

there exist "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Sonesta International Hotels v. Wellington Associates, supra,* 483 F.2d at 250. *See generally, Roberson v. Rochester Folding Box Co.,* 171 N.Y. 538, 64 N.E. 442 (1902) (holding no common law right to protection of injured feelings and discussing and distinguishing English cases granting equitable restraint where use of plaintiff's name would injure his reputation or property. *Id.,* at 547–550, 64 N.E. 442); *Pavesich v. New England Life Insurance Co.,* 122 Ga. 190, 50 S.E. 68 (1905) (finding right of privacy "derived from natural law," *id.* at 70, and analyzing English cases); Brittan, *The Right of Privacy in England and the United States,* 37 Tul.L. Rev. 235 (1963). Furthermore, the balance of hardships tips decidedly toward Ali in this matter, for defendant Playgirl, Inc. is merely being restrained from further distribution and is not being affirmatively ordered to undertake new or unduly burdensome obligations. Since all the parties and legal contentions are presently before this court, to require plaintiff to commence a new action in England would subject him to unnecessary and avoidable hardship. Finally, as discussed previously, plaintiff has satisfied this court that there is a strong possibility of irreparable injury absent the issuance of a preliminary injunction. For the foregoing reasons, the preliminary injunction shall extend to restrain defendants' activities with respect to all copies of the magazine containing the disputed portrait in England as well as New York.

## CONCLUSION

■ A hearing on the issue of a permanent injunction shall be scheduled promptly. Among the issues there to be determined is whether or not the privacy or publicity law of England does in fact "have other efficacy with respect to a public figure." *Rosemont Enterprises v. Urban Systems, Inc.,*

---

10. A New York court with personal jurisdiction over the parties has the power to enjoin the commission of acts in a foreign jurisdiction. *Niagara Falls International Bridge Co. v. Grand Trunk Railway,* 241 N.Y. 85, 148 N.E. 797

(1925); *Madden v. Rosseter,* 114 Misc. 416, 187 N.Y.S. 462 (Sup.Ct. N.Y.Co.), *aff'd mem.,* 196 App.Div. 891, 187 N.Y.S. 943 (1st Dept. 1921). *See* 42 Am.Jur.2d Injunctions § 252 at 1042.

*supra,* 42 A.D.2d at 544, 345 N.Y.S.2d 18. *See* Rule 44.1, Fed.R.Civ.P. In addition, plaintiff will maintain the burden of establishing that there is a likelihood of recurrent violations of his rights. *United States v. W. T. Grant, supra.* Accordingly, plaintiff's request for preliminary relief pursuant to Rule 65 is granted. Defendant Playgirl, Inc., is hereby enjoined from further distribution and dissemination of any copies of the February, 1978 issue of Playgirl Magazine containing the portrait complained of, and shall neither transfer nor remove from the jurisdiction any such copies presently in its custody, as well as the printing plates or devices used to reproduce the portrait, until further order of the court. Defendant Independent News is hereby directed to retain in its possession, pursuant to its stipulation at the hearing on February 2, those copies of the February, 1978 issue of Playgirl Magazine it has recovered and impounded.

So Ordered.